A91A1864, A91A1865. ALFORD et al. v. OSEI-KWASI et al.; and vice versa.
(418 SE2d 79)

BIRDSONG, Presiding Judge.

These appeals concern grants and denials of motions for summary judgment. Yolanda Alford and Sterling Alford, her minor son, brought this action against DeKalb County Deputy Sheriff, Lt. Peter Osei-Kwasi, DeKalb County Sheriff Pat Jarvis, DeKalb County Chief Jailer Wayne Melton, in their individual and official capacities, and against DeKalb County, Georgia, seeking damages under 42 USC § 1983 for violations of their rights under the United States Constitution and damages for violations of their Georgia constitutional rights and for state torts as a result of injuries allegedly incurred while Yolanda Alford was confined as a convicted prisoner in the DeKalb County Jail. At that time Yolanda Alford was seven-and-one-half months pregnant with Sterling.

Although there is no agreement about the incident immediately giving rise to these claims, the parties agree that Alford was in administrative isolation in the jail because of earlier fights with other inmates. Becoming upset that she was not allowed to leave her cell, Alford began kicking her cell door.

According to Osei-Kwasi, he was called to the scene by other jail personnel when their efforts to quiet Alford failed. After Alford disobeyed his order to stop kicking the door, he re-entered Alford's cell with the intention of moving her to another location, but Alford resisted. Also according to Osei-Kwasi, he knew Alford was pregnant, knew that she would fight to get her way, and knew that she would not be easily subdued, and thus he decided to incapacitate her with a Taser. (A Taser fires darts attached to the gun with wires and temporarily incapacitates a prisoner with low amperage, high voltage electrical shock from a nine volt battery in the Taser.) Osei-Kwasi states he decided the Taser was the most appropriate means to subdue Alford

because it would not cause permanent injury and would avoid a physical altercation with her which might result in injuries to Alford, her unborn child, and jail personnel. Osei-Kwasi states Alford was extremely abusive, defiant and belligerent and moved toward him in an aggressive manner before he fired the Taser. Alford was struck in the arm by the Taser's darts and was incapacitated briefly. She was then taken to the jail clinic where she was examined and found without injury, except for where the Taser dart struck.

According to Alford, however, the Taser was used to punish her because she was creating a disturbance. She denies acting in a belligerent manner or that she assaulted or threatened Osei-Kwasi or other jail personnel. She claims that she was injured by the use of the Taser, that her injuries were ignored, and that because of the Taser she attempted suicide the next day.

Defendants moved for summary judgment asserting Alford did not suffer a constitutional deprivation and has no claim under 42 USC § 1983 or any state law theories. They also contended Sterling Alford had no claims because as an unborn child at the time, he had no constitutional rights. They also asserted they were entitled to judgment on any constitutional claims because of qualified immunity and on the state tort claims because of official immunity.

The trial court found Alford's 42 USC § 1983 claim has two facets: (1) shooting her with a Taser, per se, constituted cruel and unusual punishment and (2) she was denied adequate medical attention. As for the use of the Taser, the trial court found that because of Alford's and Osei-Kwasi's conflicting versions of the incident, questions of fact existed whether Osei-Kwasi's use of the Taser was warranted or whether his use of the Taser was wilful, wanton, and unauthorized. The trial court found, however, that Melton and Jarvis were not liable, even under the conflicting evidence, for any violations under § 1983 because they merely provided the Taser for official use. For the same reasons, the trial court also granted summary judgment to defendants on Alford's state law claims against Melton and Jarvis concerning the Taser.

On the medical care issue, the trial court found Alford had not established she received inadequate medical care sufficient to constitute deliberate indifference to a serious injury or illness. The trial court found there was no dispute that Alford received medical treatment several times before and after this incident, and concluded that Alford had no federal or state law claims based on the allegation she was denied adequate medical care. The trial court also granted summary judgment against Sterling Alford because the court found the Alfords had waived his claims at oral argument. *Held:*

1. The United States Supreme Court recently rejected the contention that a prisoner must have suffered serious physical injury to

maintain an action under § 1983 for violation of the Eighth Amendment. Instead, the Supreme Court held that under *Whitley v. Albers,* 475 U. S. 312 (106 SC 1078, 89 LE2d 251), the extent of the injury suffered is but one factor to be considered in assessing "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* ___ U. S. ___ (112 SC 995, 117 LE2d 156). Accordingly, since the Alfords alleged Osei-Kwasi maliciously and wantonly used the Taser to inflict pain, this action may be maintained without proof of serious physical injury. Id.

However, the test to be applied in determining whether the use of the Taser violated the Eighth Amendment is also that established in *Whitley:* " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Whitley,* supra at 320-321. Of course, Alford's claim based upon the denial of appropriate medical care is measured by the "deliberate indifference" standard announced in *Estelle v. Gamble,* 429 U. S. 97, 104 (97 SC 285, 50 LE2d 251).

### Case No. A91A1865

2. Osei-Kwasi asserts that the trial court erred by denying his motion for summary judgment based on his qualified immunity to Alford's § 1983 claims and also erred by holding that he is not entitled to claim official immunity to Alford's state law claims. Osei-Kwasi maintains he is entitled to summary judgment because, as a matter of law, Alford did not suffer a violation of her Eighth Amendment rights and even if her rights were technically violated, he is entitled to the defense of qualified immunity because he acted in good faith and the law clearly did not prohibit his actions. See *Harlow v. Fitzgerald,* 457 U. S. 800 (102 SC 2727, 73 LE2d 396). Osei-Kwasi's claim of official immunity to the state law claims is based upon his attestation that his actions were not wilful, malicious, or corrupt. *Hennessy v. Webb,* 245 Ga. 329 (264 SE2d 878).

The trial court apparently viewed the issues as turning on whether the use of the Taser was necessary. Thus, if Osei-Kwasi's version of the events was accepted, he would be entitled to judgment, but if Alford's version were believed, Osei-Kwasi's use of the Taser was based upon an improper motive which would be sufficient to deprive him of immunity under either of the defense theories he asserted.

In our view this analysis was incorrect. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. . . . After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual

punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock. The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." (Citation and punctuation omitted.) *Whitley,* supra at 319.

"[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Id. at 320. Moreover, prison administrators are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," and neither judges nor juries may "freely substitute their judgment for that of officials who have made a considered choice." Id. at 321-322. In ruling on this issue, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to [Alford], will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." Id.

"Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." (Citation and punctuation omitted.) *Hudson v. McMillian,* 117 LE2d at 166.

In applying the *Whitley* test to this appeal, we recognize that the situation existing in the DeKalb County Jail was much less serious than the prison riot-hostage situation which was present in *Whitley,* but the *Whitley* factors are appropriately used here. Id. "[O]fficials

confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.' " 117 LE2d at 165.

In applying these factors, we note the parties agree Alford was creating a disturbance in the jail by incessantly kicking the door, and the guards on the scene deemed it appropriate to call in a supervisor, Lt. Osei-Kwasi, after they were unable to stop Alford from causing the disturbance. The parties also agree Osei-Kwasi first attempted to stop the disturbance by entering Alford's cell and ordering her to stop kicking the door, but as soon as Osei-Kwasi left the cell and closed the door, Alford immediately began kicking the door again. Although at this point agreement ceases, there is no dispute that Osei-Kwasi reentered the cell and ultimately used the Taser to put an end to the disturbance. Although disputing the need for the use of the Taser, Alford admits she did not intend to stop disturbing the cell block until she gained what she wanted.

Although we also are concerned about using a device like a Taser, we cannot agree that its use is inherently wanton, malicious, or sadistic. If used properly, it avoids the physical injuries associated with other means of force. Further, although incapacitated by the Taser, Alford produced no credible evidence that the Taser caused her or Sterling Alford any serious injury or that it routinely caused serious injuries in others. Moreover, Tasers are used in other state penal systems (see e.g., *Michenfelder v. Sumner,* 860 F2d 328, 334-336 (9th Cir. 1988)) and have been used for years in the DeKalb County Jail without report of serious injury. Further, even Alford's expert did not condemn their use generally. Therefore, we do not find that using the Taser, per se, constituted a violation of the Eighth Amendment.

Considering the incident giving rise to these claims, we note also that Alford's expert acknowledged that some use of force is necessary when an inmate refuses to obey orders. The expert's objections were based on whether the disturbance at that point required using the Taser. Nevertheless, "guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker,* 898 F2d 1530, 1533 (11th Cir. 1990). We note also in this context that Osei-Kwasi stated he used the Taser to minimize possible injuries to all concerned, including Alford and her unborn child.

In *Whitley v. Albers,* the court adopted three factors for determining whether a guard used excessive force: the need for the force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. *Whitley v. Albers,* supra at 321.

Considering these factors, we note that the use of some force was necessary under the circumstances, that the force used was minor even though incapacitating, and that Alford's resulting injuries were not severe. We note also that efforts were made to have Alford stop the disturbance without using force, but she refused until she was made to do so with the Taser.

Moreover, as it is our understanding that jails or prisons are not to be run at the whim of the inmates, the use of some force was warranted to preserve order. *Bennett v. Parker,* supra. Accordingly, giving Lt. Osei-Kwasi the wide ranging deference to which he is entitled under *Whitley,* we find the evidence does not go "beyond a mere dispute over the reasonableness of [using the Taser] or the existence of arguably superior alternatives." *Whitley v. Albers,* supra at 322. Therefore, we find that Alford's Eighth Amendment rights were not violated because the evidence viewed in the light most favorable to Alford does not support a reliable inference of wantonness in the infliction of pain. See *Brown v. Smith,* 813 F2d 1187, 1189-1190 (11th Cir. 1987). Alford simply presented no evidence from which it could be inferred that Osei-Kwasi had the requisite culpable state of mind. See *Wilson v. Seiter,* 501 U. S. ___ (111 SC 2321, 115 LE2d 271, 278).

Regarding Alford's claims under our state constitution or tort law, we find that Lt. Osei-Kwasi was entitled to assert the defense of official immunity: He took these actions within the scope of his authorized duties, his position required the exercise of discretion, and Alford produced no evidence that these actions were wilful, malicious, or corrupt. *Hennessy v. Webb,* supra at 331. Further, even if Lt. Osei-Kwasi performed these discretionary acts in a negligent manner, he would still be authorized to assert the defense of official immunity. *Logue v. Wright,* 260 Ga. 206, 208 (392 SE2d 235). (There is no issue that DeKalb County has waived sovereign immunity.) Additionally, we are satisfied also that the defense of qualified immunity in *Harlow v. Fitzgerald,* supra at 818, was available to Lt. Osei-Kwasi.

Therefore, we find that the trial court erred by denying Lt. Osei-Kwasi's motion for summary judgment. Upon remand, the trial court is directed to enter summary judgment for Lt. Osei-Kwasi on these claims.

### Case No. A91A1864

3. In view of our disposition of Alford's claims against Lt. Osei-Kwasi, her claims against DeKalb County, Sheriff Jarvis and Chief Jailer Melton under 42 USC § 1983 and the Eighth and Fourteenth Amendments to the U. S. Constitution because Osei-Kwasi shot her with the Taser must also fail. Moreover, these defendants were not otherwise liable under 42 USC § 1983. See *Monell v. Dept. of Social*

*Svcs.*, 436 U. S. 658, 694-695 (98 SC 2018, 56 LE2d 611); *Brown v. Crawford*, 906 F2d 667 (11th Cir. 1990); *Fundiller v. City of Cooper City*, 777 F2d 1436, 1442 (11th Cir. 1985). "The record is barren of any evidence of 'implementation of an intentional policy or a constitutional deprivation resulting from an intentionally corrupt or impermissible policy' so as to find a cause of action under 42 USC § 1983." *Holloway v. Rogers*, 181 Ga. App. 11, 13 (351 SE2d 240). Accordingly, the trial court did not err by granting summary judgment to these defendants on these claims.

4. Alford also claims the trial court erred by finding as a matter of law that DeKalb County, Sheriff Jarvis, and Chief Jailer Melton were not liable to Alford for violating her Georgia constitutional rights to due process, freedom from abuse and cruel and unusual punishment and freedom from unreasonable seizure. As discussed in Divisions 2 and 3, supra, the record shows that Alford failed to show factually that any of these defendants took any action which could be construed to implicate any of Alford's rights under the Georgia Constitution. Consequently, the trial court did not err by granting summary judgment to these defendants. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). Moreover, these claims are subject also to Jarvis' and Melton's defenses of official immunity which is a complete defense. *Logue v. Wright*, supra; *Hennessy v. Webb*, supra. Accordingly, these enumerations of error also are without merit.

5. Alford asserts the trial court erred by determining as a matter of law that Osei-Kwasi did not violate Alford's Fourth Amendment rights when he shot her with a Taser Gun. There was no error. Alford is not entitled to bring this claim under the Fourth Amendment because at the time of this incident she was a convicted prisoner. Therefore, such claims properly are brought under the Eighth Amendment. *Graham v. Connor*, 490 U. S. 386 (109 SC 1865, 1870-1871, 104 LE2d 443). "[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, supra at 327. Accordingly, this enumeration of error is also without merit.

6. Alford asserts the trial court erred by determining as a matter of law that no defendant violated her right to adequate medical treatment under the Eighth Amendment to the Constitution of the United States. To state an Eighth Amendment violation for inadequate medical care under *Estelle v. Gamble*, supra, it must be shown that Alford's treatment was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness or where the medical care is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Rogers v.*

*Evans,* 792 F2d 1052, 1058 (11th Cir. 1986). The claims which Alford asserted fail to approach this standard. First, Alford has identified no injury or medical condition for which she was denied treatment. Second, contrary to her assertions, the record shows Alford was promptly taken to a clinic after she was incapacitated with the Taser and that she was seen in the jail clinic on several occasions thereafter. Third, Alford has identified no instance in which she requested and was denied medical care. On the contrary, the record plainly shows instances in which she has refused medical care. Thus, these undisputed facts show that Alford did not receive inadequate medical care within the meaning of the Eighth Amendment after this incident. *Estelle v. Gamble,* supra. Therefore, the defendants were entitled to summary judgment on all of Alford's claims under 42 USC § 1983 that she was denied medical care.

7. Alford's sixth enumeration of error asserts that the trial court erred as a matter of law by finding that no individual defendant violated her right to adequate medical care under state law. Her brief, however, presents no specific argument, cites no authority, and makes no reference to the transcript or record to support this enumeration. Therefore, it is deemed abandoned. Court of Appeals Rule 15 (c); *Bicknell v. Joyce Sportswear Co.,* 173 Ga. App. 897, 898 (328 SE2d 564); *Sepulvado v. Daniels Lincoln-Mercury,* 170 Ga. App. 109 (316 SE2d 554).

8. Alford claims that the trial court erred by deciding as a matter of law that Sheriff Jarvis and Chief Jailer Melton were not liable under state law for their failure to train Osei-Kwasi in using a Taser Gun and for acquiescing in and ratifying his conduct. Since we have found that Lt. Osei-Kwasi's use of the Taser did not violate Alford's rights, this enumeration presents nothing for us to review. Moreover, the doctrine of official immunity applies to these allegations, and neither defendant may be held liable for these discretionary decisions. *Logue v. Wright,* supra; *Hennessy v. Webb,* supra.

9. Alford asserts that the trial court erred by deciding as a matter of law that no individual defendant violated Sterling Alford's Georgia constitutional rights or committed tortious conduct against him. The record shows the trial court based its decision solely on what it perceived to be Alford's agreement at oral argument that Sterling Alford had no independent causes of action, and the parties to these appeals agree there was no such concession. Although this would typically require reversal, a correct decision of a trial court will not be reversed, regardless of the reasons stated. *Ely v. State,* 192 Ga. App. 203, 205 (384 SE2d 268). Although Sterling has an independent cause of action under Georgia law (see *Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504 (93 SE2d 727)), because at the time of the incident he was inseparably linked with his mother, he can stand in no

better legal position regarding the actions of the defendants than did she. Therefore, since we have concluded that no defendant was liable to Yolanda Alford under the causes of action asserted, it necessarily follows that no defendant can be liable to Sterling under these causes of action, and the trial court did not err by granting summary judgment to the defendants on Sterling Alford's claims.

*Judgments affirmed in part and reversed in part, with direction. Pope and Cooper, JJ., concur.*

DECIDED MARCH 18, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992 — 

*Thomas M. West, Ralph S. Goldberg,* for appellants.
*Johnson & Montgomery, Harry W. MacDougald, Wade H. Watson III,* for appellees.