**Sharon Denise ELLIS, Plaintiff,**

v.

**CITY OF FAIRBURN, GEORGIA, John Cameron, Fred Stanley, and K.G. Harper, Defendants.**

**No. 1:93–CV–546–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 4, 1994.

---

Lee Sexton, Lee Sexton & Associates, Jonesboro, GA, for plaintiff.

Barry Scott Noeltner, Freeman & Hawkins, Atlanta, GA, for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Defendants' Motion for Summary Judgment [17]. The Court GRANTS IN PART and DENIES IN PART Defendants' motion.

## BACKGROUND

In ruling on a motion for summary judgment, the Court is to construe the evidence, and factual inferences arising therefrom, in the light most favorable to the non-movant. *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). The following is a recitation of the evidence, and factual inferences arising therefrom, construed in the light most favorable to Plaintiff. In presenting this evidence, the Court expresses no opinion on its veracity or persuasiveness.

On August 20, 1992, Defendants Fred Stanley ("Stanley") and K.G. Harper ("Harper")—police officers with the City of Fairburn Police Department—arrested Plaintiff Sharon Denise Ellis and charged her, pursuant to O.C.G.A. § 16–8–7, with "theft by receiving stolen property." Plaintiff claims that Defendants violated various state and federal laws in the course of executing the arrest and in setting her initial bond. Specifically, Plaintiff claims that Defendants (1) subjected her to an unlawful search, seizure

and arrest in violation of the United States and Georgia constitutions; (2) subjected her to a false arrest in violation of the United States and Georgia constitutions and O.C.G.A. § 51–7–1; (3) subjected her to a false imprisonment in violation of the United States and Georgia constitutions and O.C.G.A. § 51–7–20; (4) subjected her to an arbitrary and capricious application of bail requirements in violation of the United States and Georgia constitutions; and (5) intentionally inflicted emotional distress on Plaintiff in violation of Georgia common law. Plaintiff seeks monetary damages, but not injunctive relief.

### I. *Plaintiff's Arrest.*

On August 20, 1992, Stanley and Harper received a tip that a stolen car was located near Plaintiff's house. Harper Deposition, p. 14; Ellis Deposition, p. 14. Upon investigation, they discovered that the car was in her driveway, and they confirmed that it was stolen. Harper Deposition, p. 15. Stanley and Harper spoke with Plaintiff from the steps of her house. Ellis Deposition, p. 13. Plaintiff told Stanley and Harper that she had driven the car. Harper Deposition, p. 17; Ellis Deposition, p. 35. Plaintiff also told Stanley and Harper that the person who owned the car was not present. Ellis Deposition, p. 15. Plaintiff went into the back of the house to phone her mother and, when she returned, she found Stanley and Harper in her living room, without her prior permission to enter the house. *Id.* at pp. 16–19.

Stanley asked Plaintiff if a set of keys on a living room table were the keys to the car, and Plaintiff answered that they were. *Id.* at pp. 19, 20. Stanley asked Plaintiff for the keys, got angry at her when she asked him whether she was legally obligated to give them to him, and arrested her shortly thereafter. *Id.* at pp. 19–21.[1] The parties have not directed the Court's attention to any evidence in the record that Stanley or Harper asked Plaintiff if she knew that the car was stolen, that Plaintiff acted suspiciously, or that the car had any visible indicia of having been stolen.

### II. *Plaintiff's Bond.*

Plaintiff alleges that Stanley and Harper took her to the Fairburn City Jail where she remained for three hours. Complaint. ¶ 18. Plaintiff's mother (Geneva Beasley) and father went to the jail and asked if they could post a property bond to secure Plaintiff's release. Beasley Deposition, p. 19. The clerk at the jail initially told Plaintiff's parents that they could post a property bond, but after conferring with a co-worker, she told them that they would have to post a cash bond. *Id.* at p. 19. Plaintiff's parents eventually posted a $2,000 cash bond. *Id.* at p. 18. Plaintiff claims that Defendants subjected her to "an arbitrary and capricious standard in the manner she was required to post

---

1. Plaintiff offers the following testimony about the incident:

Q. When you came back, what next happened?
A (Plaintiff). He asked—Officer Stanley asked if those were the keys to the car, and I said yes. And he wanted me to give him the keys to the car. So, you know, he asked—well, he said give me the keys to the car, and I didn't know what I was supposed to do so he asked again. And I said by law do I have to give you the keys to the car. And, in my opinion, he got very upset because I asked him that. And he said that he was going to arrest me, you know, if I didn't turn over the keys to the car. And once again I said by law do I have to give you the keys to the car. And the second time he told Officer Harper to put the handcuffs on me and arrest me.

Q. After you asked him if you had to give him the keys, what was the response, if any?

A. He didn't respond. He just looked at me.
Q. What was the next thing that was said by anybody?
A. Then after that he said, again, to give him the keys. And that's when I asked him again by law did I have to.
Q. What happened after that?
A. He instructed Officer Harper to put the handcuffs on and arrest me.
Q. Did you say anything after he instructed Officer Harper to put the handcuffs on you?
A. No.
Ellis Deposition, pp. 19–21.

bail and in violation of the Eighth Amendment...." Complaint at ¶ 36. In her Response to Defendants' Motion for Summary Judgment, Plaintiff argues that the jail clerk's insistence that her mother post a cash bond rather than a property bond violated the Eighth Amendment. Plaintiff's Response [19], p. 13. Plaintiff also argues that the amount of Plaintiff's bond was excessive because allegedly it was twice the "recommended amount." *Id.* at p. 14. Plaintiff does not cite to any evidence that a "recommended amount" exists.

## DISCUSSION

### I. *Standard of Review for Summary Judgment Motions.*

■ This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a general proposition, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). However, the nature of the movant's responsibility varies depending on which party would bear at trial the burden of proof on the issue in question.

■ Where the legal issue as to which the facts in question pertain is one on which the non-movant would bear the burden of proof at trial, the movant must demonstrate that the non-movant lacks evidence to support an essential element of his or her claim on that issue. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 & n. 2 (11th Cir.1993). The

movant need not support its motion with evidence *negating* the non-movant's claim; it " 'simply may show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case.' " *Id.* at 1115–1116 (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991)).[2] " 'Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.' " *Id.* at 1116 (quoting *Four Parcels,* 941 F.2d at 1438).

■ Where the *movant* would bear the burden of proof at trial, it must demonstrate the absence of an issue of material fact with regard to *every* element essential to its claim on the legal issue in question. *Id.* at 1115. The movant in this position " 'must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.' " *Id.* (quoting *Four Parcels,* 941 F.2d at 1438).

■ Only after the movant meets its initial burden does any obligation on the part of the non-movant arise. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Fitzpatrick,* 2 F.3d at 1116. Where the movant would bear the burden of proof at trial, the non-movant must present "evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact." *Fitzpatrick,* 2 F.3d at 1116. The movant is then entitled to summary judgment only if, based on the combined evidence presented by the two parties, no reasonable jury could find for the non-movant. *Id.*

■ Where the non-movant would bear the burden of proof at trial, the manner in which the non-movant may rebut the mov-

**2.** This showing requires more than a simple statement that the non-moving party cannot meet its burden at trial. *Four Parcels,* 941 F.2d at 1438 n. 19. "Instead, the moving party must point to specific portions of the record in order to demonstrate that the non-moving party cannot meet its burden of proof at trial." *Id. Accord*

*Fitzpatrick,* 2 F.3d at 1116 n. 2 (stating that the Eleventh Circuit, in *Four Parcels,* largely resolved any confusion over "the nature of the showing required when the movant seeks to discharge [its] initial responsibility" by pointing out an absence of evidence).

ant's initial showing depends on the way in which the movant met its initial burden. If the movant put on evidence affirmatively negating the material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* If the movant instead merely demonstrated an absence of evidence on the issue, the non-movant may respond in either of two ways:

First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* at 1116–17 (citations omitted).

■ All evidence and factual inferences should be viewed in the light most favorable to the non-movant. *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the non-movant's case. *Id.* at 248, 106 S.Ct. at 2510.

II. *Plaintiff's Claims Under the Eighth Amendment to the United States Constitution and Article 1, Section 1, Paragraph 17 of the Georgia Constitution.*

■ The Eighth Amendment to the United States Constitution and Article 1, Section 1, Paragraph 17 of the Georgia Constitution provide that "[e]xcessive bail shall not be required...." "Bail set at a figure higher than an amount reasonably calculated to [insure the presence of the defendant] is 'excessive' under the Eighth Amendment." *Stack v. Boyle,* 342 U.S. 1, 5, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). *Accord Mayfield v. State,* 198 Ga. App. 252, 253, 401 S.E.2d 297 (1990). Where a court determines a person's bail, the amount required is left to the court's sound discretion and is not subject to question absent a clear abuse of that discretion. *Gresham v. Dell,* 630 F.Supp. 1135, 1137 (N.D.Ga. 1986) (Evans, J.); *Jones v. Grimes,* 219 Ga. 585, 587, 134 S.E.2d 790 (1964). Bonds may also be administered by other select personnel in accordance with state and local law. *See generally* Title 17 of the O.C.G.A.

■ Plaintiff has made no allegation and has plead no set of facts that suggest Stanley, Harper or Cameron had any involvement, directly or as supervisors, in the alleged violation of her right against excessive bail. The Court, therefore, grants Stanley, Harper and Cameron's motion on Plaintiff's claims under the Eighth Amendment to the United States Constitution and Article 1, Section 1, Paragraph 17 of the Georgia Constitution.

■ Plaintiff does not cite to any authority for the proposition that requiring a cash bond instead of a property bond can rise to the level of an Eighth Amendment violation. Plaintiff does not even cite to any authority for the proposition that such a requirement violates state or local law. The fact that Plaintiff's mother was inconvenienced by the need to acquire cash to post the bond does not implicate the Eighth Amendment to the United States Constitution or Article 1, Section 1, Paragraph 17 of the Georgia Constitution. The Court also finds that requiring Plaintiff to produce a bond of $2,000 could not have been a violation of her right against excessive bail. Under the facts of Plaintiff's case, this requirement cannot rise to the level of a constitutional infraction.

■ Although a state may prescribe by statute the bond requirements placed on a

person, the United States and Georgia Constitutions are not implicated every time these requirements are breached. Nor are the constitutions implicated every time one is inconvenienced by a bond requirement. The Court grants City of Fairburn's motion on Plaintiff's claims under the Eighth Amendment to the United States Constitution and Plaintiff's claim under Article 1, Section 1, Paragraph 17 of the Georgia Constitution.

### III. Plaintiff's Claim Under the Fourth Amendment to the United States Constitution.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

### A. Plaintiff's Claim Against Defendants in Their Personal Capacities.

#### 1. Defendants Stanley and Harper.

Defendants Stanley and Harper contend that they are entitled to summary judgment as they had probable cause to arrest Plaintiff. They also contend that even if they did not have probable cause, they are entitled to qualified immunity for their actions. The Court will address both contentions together.

■ The doctrine of qualified immunity insulates government officials from personal liability for money damages for some actions taken pursuant to their discretionary authority. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (finding that "government officials [performing discretionary functions] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Greason v. Kemp,* 891 F.2d 829, 833 (11th Cir.1990) (same). Thus, a government official is entitled to a qualified immunity defense if "a reasonable official

could have believed [the official's] actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990). As a general rule, qualified immunity is available to all government officials "except those who either are plainly incompetent or who knowingly violate the law." *Busby v. City of Orlando,* 931 F.2d 764, 775 (11th Cir.1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

■ In evaluating a qualified immunity defense, courts in this circuit follow a two-step procedure. First, "the defendant public official must ... *prove* that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988) (emphasis added) (quoting *Ziegler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)). He may do this by showing "'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich,* 841 F.2d at 1564 (quoting *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir. Unit A July 1981)).

■ Second, after the defendant makes his preliminary showing, the burden shifts to the plaintiff who must prove that the official's conduct violated "clearly established" constitutional law. *Rich,* 841 F.2d at 1564. This determination involves a two-part analysis. *Stewart,* 908 F.2d at 1504. First, "the court must determine whether the applicable law was clearly established when the governmental action in question occurred." *Hutton v. Strickland,* 919 F.2d 1531, 1539 (11th Cir. 1990). Second, "the court must decide whether there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

The Supreme Court has instructed that courts must identify the "clearly established" right the official is alleged to have violated at a level of generality that is sufficiently particularized so as to avoid transforming the rule

of qualified immunity "from a guarantee of immunity into a rule of pleading," where any alleged right defined in sufficiently broad terms can be deemed "clearly established". *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. [citation omitted].

*Id.* at 640, 107 S.Ct. at 3039.

Stanley and Harper attempt to meet their initial burden by stating in their "Brief in Support of Defendants' Motion for Summary Judgment" that at all relevant times, they were acting within the scope of their discretionary authority in the course of carrying out their official duties. Defendants' Motion, p. 12. This statement is presented in a conclusory manner and is not accompanied by citation to any supporting evidence in the record. Conclusory statements in a brief, unaccompanied by cites to evidence in the record, cannot satisfy a party's burden of *proof.*[3] Nothing is *proved* by a conclusory declaration.

A search through Defendants' "Statement of Material Facts as to Which No Genuine Issue Exists" or through the Statement of Facts ("Introduction") section of Defendants' Brief for citations to relevant evidence in the record might cure this deficiency.[4] However, even if Stanley and Harper have met their initial burden, the Court finds that Plaintiff has satisfied her responsive burden.

The Fourth Amendment to the United States Constitution protects people against "unreasonable searches and seizures." A search or seizure is considered reasonable if there existed probable cause. *Marx v. Gumbinner,* 905 F.2d 1503, 1505–06 (11th Cir.1990). Probable cause does not require overwhelmingly convincing evidence; only reasonably trustworthy information. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See also Wilson v. Attaway,* 757 F.2d 1227, 1235 (11th Cir. 1985) (finding that probable cause "must be judged not with clinical detachment, but with a common sense view to the realities of normal life."). "Probable cause exists when the facts and circumstances at the time of arrest would cause a prudent or reasonably cautious person to believe that the accused committed the offense." *Hutton,* 919 F.2d at 1539. *See also Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (finding that "reasonable ground for belief of guilt" constitutes probable cause).

In a suit for civil damages, an officer executing an arrest, search, or seizure is entitled to qualified immunity if there was "*arguable* probable cause for the arrest" *Moore v. Gwinnett County,* 967 F.2d 1495, 1497 (11th Cir.1992) (emphasis in original), *cert. denied,* —— U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). "This is equivalent to asking whether a reasonable officer in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed." *Id.* at 1497–98.

Stanley and Harper arrested Plaintiff for theft by receiving stolen property, O.C.G.A. § 16–8–7, which consists of acquiring possession or control over stolen

---

3. Stanley and Harper's initial burden is not a pleading burden or a burden of production; it is a burden of proof and requires evidentiary support. *Rich,* 841 F.2d at 1564 (commenting that the burden placed on a defendant pleading the affirmative defense of qualified immunity is a "burden of moving forward *with the evidence.*") (emphasis added). *See also Fitzpatrick,* 2 F.3d at 1115 (instructing that on questions for which the movant would bear the burden of proof at trial, the movant " 'must show *affirmatively* the absence of a given issue of material fact: it must

support its motion with credible evidence...' ") (emphasis in original, citation omitted).

4. As a rule, the Court is hesitant to engage in such a search. It is a party's responsibility to direct the Court's attention, in the Argument section of its brief, to each portion of the record which supports each of the party's distinct arguments. Courts should not be put to the task of parsing all of the citations in a party's Statement of Facts in search of those which may be relevant to an isolated aspect of that party's argument.

property, which the person knows or should know was stolen, with the intent not to return it to its owner. Scienter is an essential element of the crime. *Hurston v. State*, 202 Ga.App. 311, 312, 414 S.E.2d 303 (1991); *McGill v. State*, 106 Ga.App. 482, 483, 127 S.E.2d 332 (1962). Knowledge may be inferred from circumstances which would "excite suspicions" in the mind of an ordinary prudent person in the possessor's position. *Austin v. State*, 89 Ga.App. 866, 868–69, 81 S.E.2d 508 (1954).

Stanley and Harper contend that Plaintiff can show no set of facts which raise a genuine issue as to whether they had probable cause or arguable probable cause for a search, seizure and arrest. The Court finds that Defendants did not have probable cause or arguable probable cause to arrest Plaintiff. According to Plaintiff's uncontroverted evidence, Defendants knew that Plaintiff had possession of the car and knew that she had used the car. Defendants also knew that Plaintiff claimed the car belonged to her uncle, and that her uncle was letting her mother -with whom Plaintiff lives- use it. Ellis Deposition, p. 15. There is no evidence, however, that Defendants had reason to suspect that Plaintiff knew or should have known that the car was stolen.[5]

The fact that Plaintiff had the keys to the car is entirely consistent with her admission that she had used the car. Possession of the keys could not have excited suspicions in a reasonable person's mind that the car was stolen. The Court also finds that Plaintiff's inquiry whether she was obligated by law to give Stanley the keys could not have suggested that she knew or should have known that the car was stolen. Asking about the extent of one's legal rights does not suggest knowledge that a crime has occurred. In fact, her inquiring whether she had to relinquish to Stanley one of the rights of ownership (i.e., retaining the keys to a car) suggests that she believed she had a legitimate legal interest in the car.

The Court finds further that Stanley and Harper did not encounter any of the general indicia that might suggest guilty knowledge. There is no evidence that the car possessed any characteristics which could have excited suspicions in Plaintiff that it was stolen. *See Hurston*, 202 Ga.App. at 313, 414 S.E.2d 303 (finding that the scienter requirement was met because: Hurston—a passenger in the car—admitted initial suspicions about the status of the car; the car was driven without keys and the steering wheel had been damaged; a photo of the true owner's daughter was displayed in the car; and the car's interior was in disorder); *Ingram v. State*, 160 Ga.App. 300, 300, 287 S.E.2d 304 (1981) (finding that evidence that the car was in appellant's yard, striped of its parts, with the vehicle identification number scratched out, was sufficient to suggest guilty knowledge). There is also no evidence that Stanley or Harper asked Plaintiff is she knew or suspected the car was stolen, and no evidence that Plaintiff said or did anything to suggest that she knew, suspected, or should have known that the car was stolen. *See Curry v. State*, 144 Ga.App. 129, 130, 240 S.E.2d 280 (1977) (finding that "[t]he urgency of the seller's desire to sell the CB radio, the unexplained reason for the seller failing to have an accompanying antenna for the unit, the common knowledge that stolen CB radios are frequently trafficked and that when his own automobile was being repaired he had removed the radio for fear someone else would steal it infers knowledge from the circumstances which should excite the suspicions of an ordinarily prudent man in the purchase of property which has recently been stolen."). There is also no evidence that Plaintiff made any contradictory or unusual statements which could have suggested to Defendants that she had the requisite knowledge or that she was lying. *See Williams v. State*, 159 Ga.App. 865, 866, 285 S.E.2d 597 (1981) (commenting that guilty knowledge can be inferred from recent possession of stolen property *without satisfactory explanation* in conjunction with other evidence); *Austin*, 89

---

5. Defendants have not cited, and the Court has not found, any law which makes a crime the mere possession of stolen property without some degree of scienter. Accordingly, Defendants do not argue that they had probable cause to arrest Plaintiff for a crime other than theft by receipt of stolen property.

Ga.App. at 869, 81 S.E.2d 508 (finding that a jury could consider "contradictory statements by the defendant" as indicia or guilty knowledge). In fact, Plaintiff gave an explanation for her allegedly innocent possession which was plausible and which, without evidence to the contrary, should have negated any ungrounded suspicion that she had the requisite knowledge.

Without any "other evidence," Stanley and Harper appear to have based their arrest on the fact that Plaintiff had possession of the car and the keys and on her having asked whether she was obligated by law to relinquish the keys to the car. This is not sufficient to establish probable cause. *See Ingram v. State,* 160 Ga.App. 300, 300, 287 S.E.2d 304 (1981) (holding that "Possession (of stolen property) alone is not sufficient to show guilty knowledge"); *Pate v. State,* 158 Ga.App. 395, 396, 280 S.E.2d 414 (1981) ("[U]nexplained possession of recently stolen goods is not sufficient in itself to authorize a conviction for receiving stolen goods, but ... such possession may be used *in conjunction with other evidence* ... to infer the knowledge required by the statute." (emphasis added)); *Watts v. State,* 157 Ga.App. 214, 214, 276 S.E.2d 884 (1981) ("Proof of possession of recently stolen property will not authorize an inference that the possessor received it with knowledge that it was stolen."); *La Roche v. State,* 140 Ga.App. 509, 510, 231 S.E.2d 368 (1976) ("Here all the state proved was possession of recently stolen property. There was no evidence of purchase at a grossly disproportionate price. Nor can an inference of guilty knowledge be drawn from defendant's testimony [that he purchased the property from third persons].").

At most, Stanley and Harper had probable cause to believe only that Plaintiff possessed a stolen car. Because mere possession of stolen property is not a crime, Stanley and Harper did not have arguable probable cause to arrest Plaintiff and are not entitled to qualified immunity from Plaintiff's claim under the Fourth Amendment to the United States Constitution. The Court, therefore, denies Stanley and Harper's motion on Plaintiff's Fourth Amendment claim against them in their personal capacities.

## 2. *Defendant Cameron.*

Plaintiff does not contend that Defendant Cameron was present at the scene of the arrest. Plaintiff claims instead that Cameron is liable to her for failing to train Defendants Stanley and Harper. Respondeat superior may not serve as the basis for imposing section 1983 liability on supervisory personnel for the acts of their subordinates. *Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir.1990). A supervisor may be held liable only if "a reasonable person in his position would know that his own conduct infringed a constitutional right of the plaintiff ... and his conduct was causally related to the constitutional violation committed by his subordinate." *Id.* at 837 (citations omitted); *H.C. ex rel. Hewett v. Jarrard,* 786 F.2d 1080, 1086 (11th Cir.1986) ("[L]iability may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions and the violation.").

Courts within the Eleventh Circuit employ the following three-prong test to determine a supervisor's liability: "(1) whether, in failing adequately to train and supervise subordinates, [the supervisor] was deliberately indifferent to [the plaintiff's rights] (2) whether a reasonable person in the supervisor's position would know that his failure to train and supervise reflected deliberate indifference; and (3) whether his conduct was causally related to the constitutional infringement by his subordinate[s]." *Greason,* 891 F.2d at 836–37 (footnote omitted). Reference to the standards set forth in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), is helpful in analyzing a supervisory liability claim. *Greason,* 891 F.2d at 837 ("Because a supervisor's orders and directions are tantamount to official policy in the eyes of a subordinate, we find the analogous situation of municipal liability under *City of Canton* to be helpful in determining whether a supervisor was deliberately indifferent to [a plaintiff's rights].").

Cameron contends that Plaintiff can show no set of facts which raise a genuine issue as to whether Cameron is liable for

Plaintiff's alleged injury. Cameron asserts in the Argument section of his brief that, "[t]he only evidence in this case is that both officers maintained proper certification[; City of Fairburn] encouraged officers to take as many continuing education courses as they could[; and] the officers were instructed as to the general guidelines of probable cause and the need for probable cause to exist before an arrest is made." Defendants' Motion, pp. 9–10. Cameron does not, in the Argument section of his brief, support these assertions with any cites to the record. Perusal of Cameron's Statement of Material Facts as to Which No Genuine Issue Exists and the Statement of Facts section of his brief also reveals no citations to the record to support these assertions. Nowhere does Cameron cite any evidence in the record concerning any type of training, certification, or encouragement to take continuing education courses. Cameron's unsupported assertions that these facts are so is of no probative value. *See McClelland v. Facteau,* 610 F.2d 693, 676–97 (10th Cir.1979) (cited by Cameron and instructing that a non-movant is not put to the burden of showing "the existence of a fact issue, unless the depositions and affidavits of the movant, standing alone, would not be enough for a directed verdict.") (citation omitted).

Cameron also asserts in his brief that "there is no evidence that Officers Stanley and Harper lacked adequate training or that the officers effected Ellis' arrest pursuant to an improper policy." Defendants' Motion, p. 9. He asserts further that Plaintiff lacks evidence that any failure to train on Cameron's part caused Plaintiff's injury. *Id.* Although Cameron can satisfy his initial burden by "point[ing] out to the district court that there is an absence of evidence to support [Plaintiff's claim that Cameron failed to train Stanley and Harper]," *Fitzpatrick,* 2 F.3d at 1116, his "pointing out" must include some citation to evidence in the record which supports his claim. *Four Parcels,* 941 F.2d at 1438 n. 19. Because Cameron has failed to cite any evidence in the record, the Court must deny his motion on Plaintiff's Fourth Amendment claim against him in his personal capacity. However, because Cameron's assertions, properly supported with cites to

evidence in the record, might be sufficient to sustain his motion on this claim, the Court denies his motion without prejudice and grants him leave to file a new motion for summary judgment on Plaintiff's Fourth Amendment claim against him in his personal capacity.

B. *Plaintiff's Claims Against Defendants in Their Official Capacities.*

1. *Defendants Stanley, Harper and Cameron.*

A suit against a party in his official capacity "generally represents only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). *See also Hafer v. Melo,* —— U.S. ——, ——, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Official capacity suits are to be treated as actions against the entity employing the party and not as actions against the party himself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). The Court, therefore, grants Stanley, Harper and Cameron's motion on Plaintiff's Fourth Amendment claim against them in their official capacities. *See id.* (dismissing the plaintiff's claims against the municipal employees in their official capacities because the claims were redundant of the plaintiff's claims against the municipality); *Parker v. Williams,* 862 F.2d 1471, 1475–76 (11th Cir. 1989) (finding that a suit against a sheriff in his official capacity for acts committed by one of his subordinates should be treated as a suit against the entity employing the sheriff - the state). *See also* 1 Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees,* § 7.11, p. 387 (2nd ed. 1991) ("supervisory liability results in *personal* liability." [emphasis in original] ).

2. *Defendant City of Fairburn.*

Governmental entities may be held liable under 42 U.S.C. § 1983 only when

a governmental "policy or custom [6]" is the "moving force" behind the constitutional deprivation. *Farred v. Hicks,* 915 F.2d 1530, 1532–33 (11th Cir.1990). *See also Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (the governmental entity's " 'policy or custom' must have played a part in the violation of federal law."). A local governmental entity may not be held liable for an employee's tortious acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." *Collins v. City of Harker Heights,* — U.S. —, —, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). In other words, respondeat superior may not serve as the basis for imposing section 1983 liability on such an entity. *Collins,* — U.S. at —, 112 S.Ct. at 1067; *City of Canton,* 489 U.S. at 392, 109 S.Ct. at 1206–07; *Monell,* 436 U.S. at 691, 694, 98 S.Ct. at 2036, 2037 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Greason,* 891 F.2d at 836. In addition, "not only must there be some degree of 'fault' on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 820, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 (1985)). *See also Vineyard v. County of Murray, Georgia,* 990 F.2d 1207, 1211 (11th Cir.) ("To attribute liability to a municipality under § 1983, the plaintiff must demonstrate that the municipality had an official policy that was 'the moving force of

the constitutional violation.' " [citation omitted] ), *cert. denied,* — U.S. —, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993).

Governmental liability can attach where the policy or custom at issue was "made by its law makers or those whose edicts or acts may fairly be said to represent official policy...." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. In other words, if a municipality did not itself enact the allegedly offending policy, the plaintiff must show that the municipal employee who did possessed the requisite authority to make official policy within the meaning of *Monell.* Under the appropriate circumstances, "municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Also, municipal liability may be predicated upon the act of even a low-level subordinate who has been delegated final authority in a limited area, while a high-level official's order may not be actionable unless he or she possesses final decisionmaking authority with respect to that particular area. *Id.* at 483, 106 S.Ct. at 1300.

In determining whether a governmental official is vested with the authority to make policy, courts are advised that municipal liability should only attach if the unconstitutional decision was "a deliberate choice to follow a course of action" and if state or local law authorized the decisionmaker "responsible for establishing final government policy [to make such policy] with respect to the subject matter in question." *Id.* at 483–84, 106 S.Ct. at 1300. In the final analysis, "policymaking authority" is a question of state law. *Jett v. Dallas Indep. School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (finding that state and local law, as well as "custom and usage having the force of law," may illustrate which officials or governmental en-

---

6. The term "custom" includes "persistent and wide-spread ... practices," "permanent and well settled" practices, and "deeply embedded traditional ways of carrying out policy." *Adickes,* 398 U.S. at 167–68, 90 S.Ct. at 1614. A government need not formally adopt a custom for the custom to take on the force of law. It may take on such force by virtue of being sufficiently settled and

permanent. *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985) (citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36). "To have this effect, the custom must be 'created' by those whose 'edicts or acts may fairly be said to represent official policy.' " *Id.* (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38).

tities are endowed with final policymaking authority with regard to the action in question). *See generally Cornfield v. Consolidated High School Dist. No. 230,* 991 F.2d 1316 (7th Cir.1993). With regard to police training, "[a] police department's failure to adequately train its officers may constitute a 'policy' giving rise to governmental liability." *Farred,* 915 F.2d at 1533 (citing *Canton,* 489 U.S. 378, 109 S.Ct. 1197).

■ City of Fairburn contends that Plaintiff can show no set of facts which raise a genuine issue as to whether a City of Fairburn policy or custom caused Plaintiff's alleged injury. In support of its contention, City of Fairburn relies on the same portion of Defendants' brief on which Cameron relied. The Court, therefore, denies City of Fairburn's motion for the same reasons it denied Cameron's motion in his personal capacity. As with Cameron, the Court denies City of Fairburn's motion without prejudice and grants City of Fairburn leave to file a new motion for summary judgment on Plaintiff's Fourth Amendment claim against it.

## IV. *Plaintiff's State–Law Claims Against Defendants.*

### A. *Official Immunity.*

The Georgia Constitution provides municipalities and their employees with a limited immunity to liability for damages. Ga. Const., Art. 1, Sec. 2, Para. 9 (1993); *Hiers v. City of Barwick,* 262 Ga. 129, 131, 133, 414 S.E.2d 647 (1992) (finding that sovereign immunity extends to municipalities in certain circumstances). *See also* O.C.G.A. § 36–33–1 (discussing waiver of a municipality's sovereign immunity).

■ As a general proposition, "[a] municipality is immune from liability for the negligent performance of its governmental duties, but may be held liable for negligence in the performance of its ministerial duties." *Sinkfield v. Pike,* 201 Ga.App. 652, 653, 411 S.E.2d 889 (1991) (citations omitted); O.C.G.A. § 36–33–1. Georgia courts have explained that a duty is considered "governmental" if it is "legislative or judicial" in nature, *City of Atlanta v. Atlantic Realty Co.,* 205 Ga.App. 1, 3, 421 S.E.2d 113 (1992),

and have held that a city's maintenance of its streets and sidewalks in safe condition is ministerial in nature, *id.* at 3, 421 S.E.2d 113, while the collection of garbage is governmental. *City of Atlanta v. Chambers,* 205 Ga. App. 834, 835, 424 S.E.2d 19 (1992).

With regard to law enforcement, a municipality is not liable for the illegal arrest of a person by its police officers. O.C.G.A. § 36–33–3 ("A municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."). *See also Brown v. City of Union Point,* 52 Ga.App. 212, 214, 183 S.E. 78 (1935) (finding that a municipality is immune to suit based on the negligent or intentional conduct of its employees in the conduct of governmental duties); *Pounds v. Central of Georgia Ry. Co.* 142 Ga. 415, 416, 83 S.E. 96 (1914) (finding that a police officer acting as an officer of the city is performing governmental functions); *Gray v. Mayor and Council of Griffin,* 111 Ga. 361, 368, 36 S.E. 792 (1900) ("A municipal corporation is not liable to an action for damages for the illegal arrest of a citizen by one of the police officers of the city.").

■ As for a municipality's employees, a municipal employee is immune from liability for the negligent or grossly negligent performance of his discretionary duties, but may be held liable for the negligent performance of his ministerial duties. *Hendon v. DeKalb County,* 203 Ga.App. 750, 758, 417 S.E.2d 705 (1992), *cert. denied,* (July 6, 1992); *Alford v. Osei–Kwasi,* 203 Ga.App. 716, 721, 418 S.E.2d 79 (1992), *cert. denied,* (June 10, 1992). This protection does not extend to actions which are malicious, corrupt, willful, or undertaken with reckless disregard for the safety of others. *Logue v. Wright,* 260 Ga. 206, 207, 392 S.E.2d 235 (1990); *Hennessy v. Webb,* 245 Ga. 329, 331, 264 S.E.2d 878 (1980).

### 1. *City of Fairburn.*

■ The City of Fairburn is immune to liability under state tort law for Plaintiff's alleged injury because the injury resulted from two municipal police officers' allegedly

illegal arrest of Plaintiff. O.C.G.A. § 36–33–3; *Pounds,* 142 Ga. at 416, 83 S.E. 96; *Gray,* 111 Ga. at 368, 36 S.E. 792.

### 2. *Defendant Cameron.*

■ Plaintiff has alleged facts which can suggest only that Cameron caused Plaintiff's injuries through his failure to train Stanley and Harper. Plaintiff has not claimed, and the evidence Plaintiff cites does not suggest, that Cameron's alleged failure to train was the result of anything more than Cameron's negligence. Because this Court finds that Cameron was performing discretionary functions when he trained or failed to train Stanley and Harper, Cameron is entitled to immunity from Plaintiff's state-law claims.

### 3. *Defendants Stanley and Harper.*

■ The Court finds that Stanley and Harper were acting within their discretionary authority when they arrested Plaintiff. *See Logue,* 260 Ga. at 208, 392 S.E.2d 235 (finding that a police officer's decision to rush to the scene of a disturbance was within his discretion, and, therefore, that his negligence in not activating his blue light and siren cannot give rise to liability; this is so even though the officer had no independent discretion to violate the law by failing to activate his light and siren); *Alford,* 203 Ga.App. at 721, 418 S.E.2d 79 (finding that a sheriff's deputy was acting within his discretionary authority when he used a Taser stun-gun on an unruly prison inmate). The decision to arrest Plaintiff was within Stanley and Harper's discretionary authorities: Although Stanley and Harper did not have the discretion to violate the law by arresting Plaintiff without probable cause, they are immunized against Plaintiff's state law claims to the extent that their allegedly illegal arrest was the result of their negligence, as opposed to their malice, corruption, wilfulness, or reckless disregard for the safety of others.

Stanley and Harper contend that Plaintiff has produced no evidence that their actions were malicious, corrupt, willful, or undertaken with a reckless disregard. The Court agrees with Plaintiff, however, that there is some evidence in the record from which a jury could find that Stanley and Harper acted maliciously and wilfully. Plaintiff's testimony suggests that Defendants arrested her (without probable cause) because they disapproved of her asking Stanley whether she was legally obligated to give him the keys to the stolen car, and because they were angry that she did not give him the keys. Ellis Deposition, pp. 19–21. *See also* Plaintiff's Brief, p. 24 (proposing this interpretation). A jury could conclude that Defendants arrested Plaintiff to punish her for her question and for not turning over the keys prior to receiving an answer. This could constitute a malicious and wilful violation of Plaintiff's rights.

### B. *Unlawful Search, Seizure and Arrest.*

The Court denies Stanley and Harper's motion on Plaintiff's claim under Article 1, Section 1, Paragraph 13 of the Georgia Constitution for the same reasons it denied their motion on Plaintiff's Fourth Amendment claim and their assertions of official immunity.

### C. *False Arrest.*

Plaintiff claims that Stanley and Harper falsely arrested her in violation of O.C.G.A. § 51–7–1. O.C.G.A. § 51–7–1 provides: "An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." The Georgia Code defines "malice" as "personal spite or [ ] a general disregard of the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51–7–2. The Georgia Code also provides that "[l]ack of probable cause shall be a question for the jury, under the direction of the court." O.C.G.A. § 51–7–3.

The Court denies Stanley and Harper's motion on Plaintiff's claim under O.C.G.A. § 51–7–1 for the same reasons it denied their motion on Plaintiff's Fourth Amendment claim and their assertions of official immunity.

### D. *False Imprisonment.*

■ Plaintiff claims that Stanley and Harper falsely imprisoned her in violation of O.C.G.A. § 51–7–20. O.C.G.A. § 51–7–20

provides: "False imprisonment is the unlawful detention of the person of another for any length of time, whereby such person is deprived of his personal liberty." A police officer is not liable under this statute for a warrantless arrest if he had probable cause to make the arrest. *Amason v. Kroger Co.,* 204 Ga.App. 695, 696–97, 420 S.E.2d 314 (1992). In determining whether the officer had probable cause, "the question is not whether every element of the crime had been established without dispute before the arrest was made, but whether there is any evidence [that the officer] acted only with a desire to harm [the plaintiff]." *Id.* at 697, 420 S.E.2d 314.

The Court denies Stanley and Harper's motion Judgement on Plaintiff's claim under O.C.G.A. § 51–7–20 for the same reasons it denied their motion on Plaintiff's Fourth Amendment claim and their assertions of official immunity.

### E. Intentional Infliction of Emotional Distress.

Georgia courts look to the Restatement (Second) of Torts for the definition of intentional infliction of emotional distress:

> The Restatement [provides] that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress," and notes that "[t]he cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Norfolk Southern Ry. v. Spence,* 210 Ga.App. 284, 285, 435 S.E.2d 680 (1993) (citations omitted); *Bowers v. Estep,* 204 Ga.App. 615, 618, 420 S.E.2d 336, *cert. denied,* (Sept. 11, 1992).

■ To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish that a defendant's conduct "was wilful and wanton or intentionally directed to harm [her], that the actions were such as would naturally humiliate, embarrass, frighten, or outrage [her], and the conduct caused mental suffering or wounded feelings or emotional upset or distress." *Jackson v. Nationwide Credit, Inc.,* 206 Ga. App. 810, 811, 426 S.E.2d 630 (1992) (citation omitted). A plaintiff must also show that the defendant's actions "were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." *Nottingham Co. v. Resource Materials Corp.,* 210 Ga.App. 128, 130, 435 S.E.2d 447 (1993).

Based on the evidence before it, the Court finds that Stanley and Harper are not entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment [17].

The Court GRANTS each defendant's motion on Plaintiff's claim under the Eighth Amendment to the United States Constitution and on Plaintiff's claim under Article 1, Section 1, Paragraph 17 of the Georgia Constitution.

The Court GRANTS Defendants Stanley, Harper and Cameron's motions on Plaintiff's Fourth Amendment claim against them in their official capacities, DENIES Defendants Stanley and Harper's motions on Plaintiff's Fourth Amendment claim against them in their personal capacities, DENIES WITHOUT PREJUDICE Defendant Cameron's motion on Plaintiff's Fourth Amendment claim against him in his personal capacity, and DENIES WITHOUT PREJUDICE Defendant City of Fairburn's motion on Plaintiff's Fourth Amendment claim against it.

The Court GRANTS Defendants City of Fairburn and Cameron's motions on Plaintiff's state-law claims against them. The Court DENIES Defendants Stanley and Harper's motions on Plaintiff's state-law claims against them.

Remaining before this Court are the following claims:

1. Plaintiff's Fourth Amendment claim against Stanley, Harper and Cameron in their personal capacities;

2. Plaintiff's Fourth Amendment claim against City of Fairburn;

3. Plaintiff's Article 1, Section 1, Paragraph 13 claim against Stanley and Harper;

4. Plaintiff's False Arrest claim against Stanley and Harper;

5. Plaintiff's False Imprisonment claim against Stanley and Harper; and

6. Plaintiff's Intentional Infliction of Emotional Distress claim against Stanley and Harper.

So ORDERED this 4th day of March, 1994.