## A98A0114. CANTRELL v. THURMAN et al.
(499 SE2d 416)

ELDRIDGE, Judge.

Ricky G. Cantrell, plaintiff-appellant, was arrested on criminal charges and incarcerated on May 5, 1993; he was unable to make bond. He was held in the Bartow County Jail in the custody of Sheriff Donald E. Thurman and Deputy Sheriff William (Bill) Hart, chief jailor, defendants-appellants. Plaintiff remained in custody until August 10, 1993.

On July 28, 1993, plaintiff hurt his foot. The foot became infected without observable evidence, and the infection went undiagnosed by the treating physician, because there was no open wound. Plaintiff developed a fever that reached 107 degrees. A couple of days later, his foot became inflamed and severely swollen. Plaintiff described the foot as having turned red, blue, and purple; it became black and developed gangrene. Plaintiff could not wear a shoe or walk, and he was in pain. Plaintiff was unaware that he was diabetic; therefore, he told no one at the jail that he had diabetes or a family history of diabetes. Such diabetic condition was not diagnosed until he was hospitalized for his foot condition.

Plaintiff made written and oral requests for medical care and was examined and treated by Dr. Robert W. May. On examination of the injured foot, Dr. May made a diagnosis that the plaintiff had two broken toes causing the swelling; Dr. May concluded that there was no treatment for plaintiff's condition. However, there was no fracture of the foot or toes. Dr. May performed no blood tests or x-rays and administered only 600 mg. of ibuprophen. No antibiotics were admin-

istered. Plaintiff saw Dr. May on August 2, 6, 7, 9, and 10; Dr. May repeatedly noted no infection, only swelling.

On August 10, 1993, plaintiff's worsening condition caused the defendants to take the plaintiff to Cartersville Medical Center, where he was admitted, and his foot was diagnosed as infected for the first time. Surgical procedures had to be performed on the foot to save it from amputation; the foot was saved but with extensive tissue damage. Subsequently, plaintiff underwent several operations which resulted in the loss of several toes. Plaintiff contended that he was permanently partially disabled, so that he could not work as a carpenter-framer or common laborer.

On July 28, 1995, plaintiff sued the defendants, both individually and in their official capacities, under 42 USCA § 1983 for an Eighth Amendment violation of the federal constitution and under Art. I, Sec. I, Par. XVII of the 1983 Constitution of the State of Georgia for wilful and wanton denial of adequate medical care of an inmate in their custody. The defendants answered and raised defenses of qualified/good faith immunity and official immunity. On July 1, 1996, the defendants moved for summary judgment.

Defendant Hart, by affidavit, testified that the jail used two registered nurses and Dr. May to provide medical care and that the plaintiff received medical treatment from them thirteen times while in jail. He was examined by the medical staff on August 2, 1993, for soreness of his foot with follow-up treatment on August 7, 9, and 10. On August 10, 1993, Dr. May sent the plaintiff to the hospital. Defendant Hart denied that the plaintiff received inadequate medical care or was denied treatment.

Defendant Thurman, by affidavit, testified that it was the jail policy to provide appropriate medical treatment with the jail's medical staff for all prisoners and that the plaintiff received adequate medical care on 13 occasions. Thurman had no direct contact with the plaintiff and knew nothing about his medical condition. He denied any intentional or negligent deprivation of medical care to the plaintiff.

Dr. May, by affidavit, testified that he was an independent contractor for medical services with the jail and that he saw the plaintiff 13 times for treatment while the plaintiff was an inmate. On August 2, 1993, plaintiff reported soreness of his toes and was seen in follow-up on August 7, 9, and 10 before being referred to the hospital. Dr. May testified that the plaintiff was provided with appropriate medical treatment at plaintiff's request.

On June 30, 1997, the trial court granted the defendants' motion for summary judgment. Plaintiff filed a timely notice of appeal.

The only enumeration of error is that the trial court erred in granting summary judgment. Plaintiff's theory of liability is based

upon 42 USCA § 1983 in that his right to due process and Eighth Amendment right not to be subject to cruel and unusual punishment were violated by not being provided proper, adequate, and timely medical attention while he was an inmate under the defendants' custody and control. Such allegations are without merit.

1. *Eighth Amendment Analysis.* "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock. . . . *Whitley v. [Albers,* 475 U. S. 312, 319 (106 SC 1078, 89 LE2d 251) (1986)]." (Punctuation omitted.) *Alford v. Osei-Kwasi,* 203 Ga. App. 716, 718-719 (2) (418 SE2d 79) (1992); accord *Webb v. Carroll County,* 229 Ga. App. 584 (494 SE2d 196) (1997).

"To state an Eighth Amendment violation for inadequate medical care under *Estelle v. Gamble,* [429 U. S. 97, 104 (97 SC 285, 50 LE2d 251) (1976)], it must be shown that [Cantrell's] treatment was 'so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness or where the medical care is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.' *Rogers v. Evans,* 792 F2d 1052, 1058 (11th Cir. 1986)." *Alford v. Osei-Kwasi,* supra at 722-723 (6); accord *Webb v. Carroll County,* supra.

The facts and circumstances of this case fail to reach this standard. Therefore, the trial court did not err in granting summary judgment to the defendants on Cantrell's claims under the Eighth Amendment.

2. *42 USCA § 1983 Analysis.* "The allegations of one denied medical attention and incarcerated [when injured] have been held to state a cause of action under 42 USCA § 1983. *Hughes v. Noble,* 295 F2d 495 (5th Cir. 1961). The federal courts have demonstrated concern that where needed medical care is refused the denial or improvident delay of such aid may constitute deprivation of constitutional due process. *Fitzke v. Shappell,* 468 F2d 1072 (6th Cir. 1972)." *Davis v. City of Roswell,* 250 Ga. 8 (295 SE2d 317) (1982).

However, plaintiff must establish a causal connection between any policy of inadequate medical care or omissions of medical care and the constitutional deprivation of due process rights. *City of Roswell v. Davis,* 255 Ga. 158, 163 (335 SE2d 582) (1985). "A plaintiff in a

§ 1983 action must show (1) that he has been deprived of a right secured by the constitution and laws of the United States, and that (2) the defendant acted under color of state law. The Supreme Court then set forth an analysis of the under-color-of-state-law part of the foregoing two-part requirement. The conduct causing the deprivation must be fairly attributable to the state in order to be conduct under-color-of-state-law. This is characterized as the fair attribution test. It is itself broken into a two part approach which we outline here for ease in application to the facts of this case[:] A. The deprivation must be caused by: (i) The exercise of some right or privilege created by the state, or (ii) a rule of conduct imposed by the state, or (iii) a person for whom the state is responsible. B. The party charged with the deprivation must be a state actor in that: (i) He is a state official, or (ii) he has acted together with or has obtained significant aid from state officials, or (iii) his conduct is otherwise chargeable to the state. A and B are separate requirements each of which is necessary to establish conduct under-color-of-state-law." (Punctuation omitted.) *Poss v. Moreland*, 253 Ga. 730, 731-732 (324 SE2d 456) (1985).

Any acts or omissions in failing to diagnose and treat plaintiff appropriately were those of Dr. May in his professional capacity as an independent contractor physician. Therefore, any deprivation was caused by someone for whom the defendants were not responsible, and his conduct is not chargeable to the defendants as imputed liability. Plaintiff failed to show a causal connection between the deprivation of his constitutional rights and his untreated infection, because the defendants provided and arranged repeated medical attention over 13 times through Dr. May. The trial court did not err in granting summary judgment to the defendants.

3. *Tort Theory Analysis*. Also the plaintiff has asserted a number of claims under various state tort theories to which the defendants asserted a defense of sovereign and official immunity.

Under the 1991 amendment to Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983, sovereign immunity has been held to extend to all levels of the political subdivisions of the state. *Gilbert v. Richardson*, 264 Ga. 744, 747 (452 SE2d 476) (1994); see also OCGA § 50-21-22 (5); *Woodard v. Laurens County*, 265 Ga. 404 (456 SE2d 581) (1995); *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 53 (414 SE2d 638) (1992); *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294 (454 SE2d 149) (1995). The 1991 amendment reads as follows: "Except as specifically provided by the General Assembly in a State Tort Claims Act,[1] all officers and employees of the state or its departments and agencies may be subject to suit and may be liable

---

[1] The State Tort Claims Act, OCGA § 50-21-20 et seq., does not apply to counties. OCGA § 50-21-22 (5); *Woodard v. Laurens County*, supra at 405.

for injuries and damages caused by the negligent performance of, or negligent failure to perform, their *ministerial functions* and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." (Emphasis supplied.) Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

4. *Ministerial Acts Analysis.* A ministerial function has been defined as "one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." (Punctuation omitted.) *Vertner v. Gerber,* 198 Ga. App. 645, 646 (402 SE2d 315) (1991). Further, the term "official function" was interpreted to mean "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts. Under [these] definition[s], the 1991 amendment provides *no immunity for ministerial acts negligently performed* or for ministerial or discretionary acts performed with malice or an intent to injure." (Emphasis supplied.) *Gilbert v. Richardson,* supra at 753; accord *Seay v. Cleveland,* 228 Ga. App. 836 (493 SE2d 30) (1997).

Providing adequate medical attention for inmates under defendants' custody and control is a ministerial act by the sheriff and his or her deputies and does not involve the exercise of discretion to provide medical care, because medical care is a fundamental right and is not discretionary in requiring medical care; thus, such act is *not* subject to either sovereign immunity or official immunity. OCGA §§ 42-4-4 (a) (2); 42-5-2 (a); *Davis v. City of Roswell,* supra, 250 Ga. at 8; *Johnson v. Mayor &c. of Carrollton,* 249 Ga. 173 (288 SE2d 565) (1982); *Macon-Bibb County Hosp. Auth. v. Houston County,* 207 Ga. App. 530 (428 SE2d 374) (1993); *Webb v. Carroll County,* supra; *Cherokee County v. North Cobb Surgical Assoc.,* 221 Ga. App. 496, 499 (2) (471 SE2d 561) (1996); *Alford v. Osei-Kwasi,* supra. In contrast, the determination of *what* medical treatment to provide *is* an act of discretion subject to official immunity. See *Schmidt v. Adams,* 211 Ga. App. 156, 157 (438 SE2d 659) (1993). Here, however, plaintiff contended that it was the failure to provide adequate medical care that created liability and not the choice of treatment by the health care provider. Thus, sovereign and official immunity are not applicable, and the trial court erred in finding otherwise. However, for the reasons that follow, the trial court's grant of summary judgment was correct as a matter of law.

5. *Sheriff's Bond Analysis.* Also applicable to this case, the requirement of the posting of bond under OCGA § 15-16-5 waived sovereign and official immunity for acts and omissions that come under the bond coverage. The amendment in Ga. L. 1994, p. 747, was passed by the General Assembly after the 1991 amendment, and the

General Assembly had the clear intent that the sheriff and deputy sheriffs continue to be liable under bond, notwithstanding the 1991 constitutional amendment. A sheriff's bond under OCGA § 15-16-5 is a statutorily mandated written contract with the claimant as the designated third-party beneficiary; such statutory bond comes within the written contract exception of Art. I, Sec. II, Par. IX (c) of the Georgia Constitution of 1983, which is subject to the limitations of *Gilbert v. Richardson*, supra, for tort actions for discretionary acts. See *Merrow v. Hawkins*, 266 Ga. 390, 391 (467 SE2d 336) (1996); *Seay v. Cleveland*, supra; *Schmidt v. Adams*, supra at 157.

6. *Independent Contractor Analysis*. In addition, had Dr. May been an employee of the sheriff rather than an independent contractor, his acts would have been discretionary in diagnosing and choosing a course of treatment. See *Schmidt v. Adams*, supra at 157. As a government employee-physician, he would have had the protection of official immunity for medical malpractice. *Keenan v. Plouffe*, 267 Ga. 791 (482 SE2d 253) (1997); *Swofford v. Cooper*, 184 Ga. App. 50, 53 (2) (360 SE2d 624) (1987), aff'd, 258 Ga. 143 (368 SE2d 518) (1988). However, as an independent contractor working for the government, he was not an employee within the meaning of either the 1991 amendment or OCGA § 50-21-21 (b) and did not have official immunity. See *Keenan v. Plouffe*, supra at 792-793; *Davis v. Stover*, 258 Ga. 156 (366 SE2d 670) (1988); *Swofford v. Cooper*, supra at 53. Unlike *Gilbert v. Richardson*, supra, the sheriff had no liability under respondeat superior, because Dr. May was not his employee and was an independent contractor physician exercising his independent professional judgment and discretion. Thus, any negligence of Dr. May could not be imputed to the defendants. OCGA § 51-2-4; *Lee v. Satilla Health Svcs.*, 220 Ga. App. 885 (470 SE2d 461) (1996); *Gray v. Vaughn*, 217 Ga. App. 872, 874-875 (2) (460 SE2d 86) (1995).

7. *Proximate Cause Analysis*. Moreover, no act or omission by the defendants was either the proximate cause or a concurrent proximate cause of plaintiff's injury; the cause or supervening cause, if any, was the treatment by Dr. May. "Here, the evidence, without question, leads only to the conclusion that [the defendants were] not the proximate cause of [plaintiff's] injuries. [Plaintiff was injured as the result of an accident and such closed injury became infected and worsened, not by any acts or omissions of the defendants, but by the allegedly negligent acts and omissions of the independent contractor physician, Dr. May.] Although ordinarily a jury question, lack of proximate cause may be decided as a matter of law when the causal connection between the defendant[s'] conduct and the injury is too remote for the law to countenance a recovery. (Citation and punctuation omitted.) *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 67 (397 SE2d 576) [(1990)]. Thus, the question of proximate cause could

be decided as a matter of law by the [trial] court. *Atlanta Obstetrics &c. v. Coleman,* [260 Ga. 569, 570 (398 SE2d 16) (1990)]." *Deese v. NationsBank of Ga.*, 222 Ga. App. 275, 277 (2) (474 SE2d 18) (1996); see also *Bradley Center v. Wessner*, 250 Ga. 199 (296 SE2d 693) (1982); *Olympia Svcs. v. Sherwin Williams Co.*, 224 Ga. App. 437, 439 (1) (480 SE2d 883) (1997). To determine remoteness as a matter of law, "the inquiry is not whether the defendant[s'] conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery." (Punctuation omitted.) *Collie v. Hutson*, 175 Ga. App. 672, 673 (334 SE2d 13) (1985), quoting *Hercules, Inc. v. Lewis*, 168 Ga. App. 688, 689 (309 SE2d 865) (1983).

In sum, the trial court erred in finding that the defendants were entitled to official immunity; however, the grant of summary judgment was correct as a matter of law under the other tort principles discussed above. Thus, the grant of summary judgment must be affirmed, because the judgment was right for any reason.

*Judgment affirmed. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 24, 1998.

*Carl V. Kirsch,* for appellant.
*White, Choate & Watkins, Harry B. White,* for appellees.