A04A2297. BANKS et al. v. HAPPOLDT.
A04A2298. BANKS et al. v. HAPPOLDT et al.
(608 SE2d 741)

BLACKBURN, Presiding Judge.

James Happoldt in one action and his father and the administrator of his sister's estate in a second action sued various Monroe County officials to recover for injuries Happoldt and his deceased sister received in a car accident allegedly caused by a negligently-maintained road in Monroe County. The county officials appeal the denial of their motion for summary judgment in both actions. We reverse, holding that the county officials were covered by sovereign and official immunity in their alleged actions and were therefore entitled to summary judgment.

This is the second appearance of this case before us. In its first appearance in *Happoldt v. Kutscher*,[1] we upheld summary judgment granted to a previous defendant (the county subdivision review officer). As we stated in that case,

> [i]n reviewing the grant or denial of summary judgment, this court conducts a de novo review of the evidence. As the movant for summary judgment, the county employee had the burden to show there was no genuine issue of material fact for trial and that the undisputed facts, viewed in the light most favorable to the plaintiffs, warranted judgment as a matter of law.

(Citation and punctuation omitted.) Id. at 97.

So construed, the evidence shows that on November 3, 1997, Happoldt was driving a vehicle (with his sister and another person as passengers) on Pate Road in Monroe County. At a certain point, the road pavement, eroded by water and traffic, narrowed to seventeen feet four inches with an eight- to eleven-inch drop-off on the right shoulder. As Happoldt entered this area, his right front tire went off the pavement into the drop-off, causing the vehicle to spin out of control and into the path of an oncoming vehicle. The resulting collision severely injured Happoldt and resulted in his sister's death.

Happoldt sued Sid Banks as the Monroe County road superintendent in his individual and official capacities,[2] Monroe County's five commissioners in their individual and official capacities, and

---

[1] *Happoldt v. Kutscher*, 256 Ga. App. 96 (567 SE2d 380) (2002).

[2] Although the complaint indicated that Banks was sued only in his official capacity, the course of the proceedings make it clear that plaintiffs also intended to sue Banks in his individual capacity. See *Ward v. Dodson*, 256 Ga. App. 660, 662 (569 SE2d 554) (2002) ("in determining the capacity in which a defendant is sued, courts should look to the complaint and the course of the proceedings").

others who are no longer parties to the suit, for negligent maintenance of the road. His father and his sister's estate administrator filed a similar action against the same defendants. The remaining defendants moved for summary judgment in both actions, claiming they were protected by sovereign and official immunity. The plaintiffs responded that the defendants' acts in failing to maintain the road so that it was at least 20 feet in width were ministerial acts that were unprotected by official immunity. Regarding the official immunity argument, the court found that fact issues existed as to whether defendants' acts were ministerial as opposed to discretionary and therefore denied summary judgment in both actions. The court did not address, nor do plaintiffs on appeal, the sovereign immunity argument. Case No. A04A2297 is the defendants' appeal in the Happoldt action, and Case No. A04A2298 is their appeal in the father/administrator action.

1. Although not addressed by either the trial court below or the plaintiffs on appeal, the doctrine of sovereign immunity (argued by the defendants at every stage) bars these actions insofar as they were brought against the various county officials in their official capacities.

"Sovereign, or governmental, immunity protects governmental bodies from legal action." *Standard v. Hobbs*.[3] "In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity to the state and all of its departments and agencies, and this immunity is to prevail except as specifically provided therein. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e)." (Punctuation omitted.) *Gilbert v. Richardson*.[4] This sovereign immunity applies to counties, id. at 747 (2), and thus protects county employees who are sued in their *official* capacities. *Stone v. Taylor*.[5] See *Cameron v. Lang*[6] ("[s]uits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity") (punctuation omitted). In contrast, official immunity (which we address in Division 2 below) offers limited protection to county employees sued in their *individual* capacities for torts they commit in performing their official functions. *Stone*, supra at 888 (1). See *Gilbert*, supra at 750 (4) ("[w]hile suits against public employees in their personal capacities involve official immunity, suits against public employees in their official capacities . . . involve sovereign immunity") (punctuation omitted).

---

[3] *Standard v. Hobbs*, 263 Ga. App. 873, 878 (2) (589 SE2d 634) (2003).
[4] *Gilbert v. Richardson*, 264 Ga. 744, 746 (1) (452 SE2d 476) (1994).
[5] *Stone v. Taylor*, 233 Ga. App. 886, 887 (1) (506 SE2d 161) (1998).
[6] *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001).

"Sovereign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege and the waiver must be established by the party seeking to benefit from the waiver." (Punctuation omitted.) *Athens-Clarke County v. Torres*.[7] Here plaintiffs advance no argument nor make any showing that an Act of the General Assembly specifically waived the sovereign immunity protecting these county officials. See Ga. Const. 1983, Art. I, Sec. II, Par. IX (e) ("[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver"). Accordingly, the trial court erred in denying summary judgment as to all claims against the defendants in their official capacities. See *Kordares v. Gwinnett County*.[8]

2. We hold that the trial court also erred in denying summary judgment as to those claims against the defendants in their individual capacities.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Punctuation and footnotes omitted.) *Cameron*, supra at 123 (1). See Ga. Const. 1983, Art. I, Sec. II, Par. IX (d). Thus, "[d]amage suits are maintainable in this state against government officers and agents for failure to perform ministerial duties, but such officers and employees are immune from negligence claims when the acts complained of involve a discretionary function of an office." (Punctuation omitted.) *Stone*, supra at 888 (2), quoting *Nelson v. Spalding County*.[9]

---

[7] *Athens-Clarke County v. Torres*, 246 Ga. App. 215, 216 (1) (540 SE2d 225) (2000).

[8] *Kordares v. Gwinnett County*, 220 Ga. App. 848, 849-850 (470 SE2d 479) (1996).

[9] *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982).

Because plaintiffs here do not allege that the county officials acted with malice or with an actual intent to cause injury, the county officials are immune from liability if their alleged negligence involved discretionary as opposed to ministerial acts. In the first appeal of this case, we set forth the distinction between these two types of acts:

A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

(Punctuation and footnotes omitted.) *Happoldt*, supra at 98 (1).[10]

"Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case." *Woodard v. Laurens County*.[11] We look to "the character of the specific actions complained of." (Punctuation omitted.) *Larkins v. Cobb County School Dist.*[12] See *Wanless v. Tatum*[13] (examine specific allegations).

Here the plaintiffs claim that Banks as road superintendent and the other defendants as commissioners who generally oversaw Banks' work "were all negligent in allowing the road to remain at a width of less than 20 feet." They cite to certain "Minimum Acceptable Road Standards," which the county commissioners adopted in the 1970s and which required a "[m]inimum road surface width of 20 [feet]." They presented evidence below that in addition to other citizen complaints, 16 months prior to the accident the county commissioners and Banks had received a written citizen complaint that Pate Road dangerously narrowed in the relevant area with a severe drop-off on the shoulder. Plaintiffs claim that Banks had a ministerial

---

[10] As noted in *Brown v. Taylor*, 266 Ga. App. 176, 177, n. 1 (596 SE2d 403) (2004), the definition of "discretionary function" found in the Georgia Tort Claims Act (GTCA) (see OCGA § 50-21-22 (2)) does not apply here. "[T]he pre-existing definition of discretionary function [applies] to cases involving the official immunity of county employees, because county employees fall outside the scope of the GTCA, and their actions therefore are not subject to the Act's definition of discretionary function." (Punctuation omitted.) *Brown*, supra at 177, n. 1.

[11] *Woodard v. Laurens County*, 265 Ga. 404, 407 (2) (456 SE2d 581) (1995), citing *Nelson*, supra at 336 (2) (a).

[12] *Larkins v. Cobb County School Dist.*, 225 Ga. App. 387, 388 (484 SE2d 10) (1997).

[13] *Wanless v. Tatum*, 244 Ga. App. 882 (536 SE2d 308) (2000).

duty to repair the road to meet the minimum 20-foot standard, that the county commissioners had a ministerial duty to ensure that Banks did such, and that the defendants' joint failure to perform these ministerial duties rendered them personally liable for negligent acts in the performance of their official functions.

Plaintiffs' arguments fail for at least two reasons. First, the "Minimum Standards" do not apply to Pate Road. Pate Road existed as a county road long before the enactment of the "Minimum Standards." Despite the lay opinion of two county commissioners that the "Minimum Standards" applied to all county roads, the standards do not provide that previously existing county roads must meet these standards, but simply require that privately developed subdivision roads must meet the standards before the county will accept those roads. Thus, the key premise of plaintiffs' argument — that the duty to widen Pate Road was ministerial since the "Minimum Standards" required Pate Road to be 20 feet in width — fails. Absent such applicable standards, plaintiffs cannot establish that the defendants' actions were ministerial — namely, that the procedures or instructions were so "clear, definite and certain as merely to require the execution of a relatively simple, specific duty." (Punctuation omitted.) *Happoldt*, supra at 98 (1). Indeed, Banks testified that no mandated county policy directed his actions in maintaining the roads, which testimony the plaintiffs could not contradict other than by pointing to the inapplicable "Minimum Standards." This demonstrates that the duty to repair Pate Road was discretionary. See *Woodard*, supra at 407 (2) (absent established procedures regarding same, county employees' duty to remove tree branches obscuring stop sign was discretionary); *Brown v. Taylor*[14] (absent a formal or written policy regarding road maintenance, county employees' duty to repair six-inch drop at road shoulder due to broken pavement was discretionary); *Standard*, supra at 876 (1) (action is ministerial only if county creates policy requiring certain actions under certain situations); *Kordares*, supra at 851 (absent county procedure dictating the method of inspection, road official's alleged negligent inspection was discretionary). Compare *Nelson*, supra at 336 (2) (a) (where county policy required county employee to replace and repair stop signs once he was notified of problem, his actions were ministerial); *Lincoln County v. Edmond*[15] (county policy required road official to remove a fallen tree from a county road once he received notice of it, making his duty to do so ministerial); *Joyce v. Van Arsdale*[16] (road superintendent's

---

[14] *Brown v. Taylor*, 266 Ga. App. 176, 177 (596 SE2d 403) (2004).

[15] *Lincoln County v. Edmond*, 231 Ga. App. 871, 874 (2) (501 SE2d 38) (1998).

[16] *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96-97 (395 SE2d 275) (1990).

actions in erecting road barricade were ministerial where county commission directed him to erect barricade).

Second, even if the "Minimum Standards" were to apply to previously existing county roads, nothing in the standards indicate, nor does any county policy mandate, that the road superintendent (or the supervising county commissioners) expend the resources necessary to bring all 399 miles of Monroe County roads into immediate compliance. The evidence is undisputed that Banks's responsibilities as road superintendent necessarily include weighing various factors in deciding which roads to repair and how to repair them. These factors include, for example, (i) the limited amount of county money, resources, and personnel available for repair work, (ii) which roads Banks feels need the repairs most, (iii) which method of repair best uses and preserves county funds, and (iv) which repairs Banks decides to prioritize because of safety or other concerns. Banks testified that he is doing the best he can to fix and widen the older roads based on the money available. Finally, the week prior to the accident, Banks inspected Pate Road and determined that in his opinion, the road was in satisfactory condition and did not present a hazard to traffic. Although plaintiffs presented evidence that the road as narrowed by erosion and traffic was hazardous and caused the accident, the bottom line is that Banks's duty to repair Pate Road was not mandated by a specific county policy but was left to his discretion based on his weighing the various factors set forth above. Accordingly, official immunity protected his actions as well as the actions of the county commissioners who themselves were governed by no specific policy but simply oversaw Banks's exercise of independent initiative and judgment.

Georgia law is clear that when a county road official is allowed the discretion to determine how to allocate resources in repairing washed-out or eroded roads and their shoulders, official immunity protects his actions as discretionary. In *Norris v. Emanuel County*,[17] the plaintiff was injured when she drove her vehicle onto an eroded, weakened road shoulder, which collapsed, tipping her vehicle over. We affirmed summary judgment in favor of the road superintendent and county commissioners, holding:

> Here, the undisputed evidence shows that Emanuel County experienced extreme rainfall in February and March 1998, which damaged several roads. [The road superintendent] testified that he had to exercise his judgment and discretion in determining how to allocate his work forces, equipment,

---

[17] *Norris v. Emanuel County*, 254 Ga. App. 114 (561 SE2d 240) (2002).

and time to repair the damage. [He] further testified that there were no guidelines or procedures in place for determining how to allocate county resources. Where a decision is left to the personal judgment of government officials, such decisions are properly characterized as discretionary.

(Punctuation omitted.) Id. at 118 (2).

Similarly, the plaintiffs in *Coffey v. Brooks County*[18] wrecked their cars in a washed-out section of road, which they claim was improperly maintained by county officials. We held that decisions as to when to repair or barricade various roads were discretionary resource-allocation decisions protected by official immunity. Id. at 889 (2) (b). See *Riggins v. City of St. Marys*[19] (city had discretion in prioritizing projects to be completed under SPLOST referendum; therefore, delay in installing traffic light was a discretionary act); *Terry v. Wade*[20] (road commissioner has wide discretion in determining which damaged roads to repair first).

Beyond the specific concept of resource allocation, as a general matter county road officials "necessarily [have] discretionary powers as to what work should be done, when, how and where necessary." *Vickers v. Motte.*[21] See *Hennessy v. Webb*[22] ("there is no liability on the part of a county commissioner in deciding when and how to work on roads because such a decision was discretionary"). The key principle is that a decision whether and when to repair a road and how the repair is designed is discretionary, whereas the actual work of repairing it is ministerial. *Ross v. Taylor County*[23] (whereas the decision to do road construction work is discretionary, carrying out the physical details of the work — once it has been decided to do the work — is ministerial in nature). As stated in *Joyce*, supra at 97:

> Should the county decide when a street should be opened, closed, or repaired, or when a sewer should be built, it is clearly exercising legislative or judicial functions, but when it engages in the work of opening, closing, or repairing a street, or building a sewer, and is thus engaged in the

---

[18] *Coffey v. Brooks County*, 231 Ga. App. 886 (500 SE2d 341) (1998), rev'd in part on other grounds, *Rowe v. Coffey*, 270 Ga. 715 (515 SE2d 375) (1999).

[19] *Riggins v. City of St. Marys*, 264 Ga. App. 95, 102 (2) (589 SE2d 691) (2003).

[20] *Terry v. Wade*, 149 Ga. 580 (1) (101 SE 539) (1919).

[21] *Vickers v. Motte*, 109 Ga. App. 615, 617 (137 SE2d 77) (1964).

[22] *Hennessy v. Webb*, 245 Ga. 329, 331 (264 SE2d 878) (1980).

[23] *Ross v. Taylor County*, 231 Ga. App. 473, 474 (3) (498 SE2d 803) (1998).

physical execution of the work, it is evidently in the discharge of duties purely of a ministerial nature.

(Punctuation omitted.)

Thus, in *Stone*, supra at 887, the plaintiff sued county officials to recover for injuries received when a steep four- to seven-inch drop-off on the road shoulder caused her vehicle to wreck. The road official had inspected the relevant stretch of road before the accident and had decided not to modify the shoulders. Id. at 889 (2). We held that his decision not to do the work was discretionary and was therefore protected by official immunity. Id. See *Cooper v. Paulding County School Dist.*[24] (school principal's allowing hazardous condition in parking lot to exist was discretionary act); *Stone*, supra at 889 (2) (absent decision from commissioner to begin work on road shoulders, failure to begin work was discretionary).

On the other hand, in *Joyce*, supra at 95-96, the county commission directed the road superintendent to close a bridge. Plaintiff, who later had an accident at the barricade, alleged that the superintendent's erection and inspection of the barricade were negligent. Id. We held that the road superintendent's actions in erecting and inspecting the barricade were ministerial and were therefore not protected by official immunity. Id. at 97. See *Phillips v. Walls*[25] (actions of road crews in carrying out road maintenance as directed were ministerial).

Here, no decision or established procedure directed that Pate Road be immediately repaired to fix the narrowing of the road or the shoulder drop-off. Rather, Banks inspected the road the week before and decided not to have the road worked on. This fell within the parameters of a discretionary action. Accordingly, official immunity protected him and the commissioners from liability. We are therefore constrained to hold that the trial court erred in denying defendants summary judgment on all claims asserted against them in their individual capacities.

While harsh rulings can result from the application of current Georgia law in cases like this, it is for the legislature to address such concerns, not this Court. Regarding official immunity, we note that county governing bodies are currently authorized to limit the unfettered discretion of county officials by enacting specific procedures that require road officials to meet certain time requirements in

---

[24] *Cooper v. Paulding County School Dist.*, 265 Ga. App. 844, 845-846 (595 SE2d 671) (2004).

[25] *Phillips v. Walls*, 242 Ga. App. 309, 311-312 (1) (a) (529 SE2d 626) (2000).

completing designated responsibilities. Such enactments would provide broader remedies for unsuspecting citizens who are injured by the failure to meet the responsibilities imposed by the county ordinances.

*Judgments reversed. Barnes and Mikell, JJ., concur.*

DECIDED DECEMBER 17, 2004 —

*Jarrard & Davis, Donald J. Grate*, for appellants.

*Lovett, Cowart & Ayerbe, Linwood R. Lovett, Paul R. Ayerbe, Matthew M. Myers*, for appellees.