### A10A1192. SCOTT v. WAITS et al.
(703 SE2d 419)

DOYLE, Judge.

Lillian and Charles Waits sued Donnie D. Scott, the school resource officer for Woodland High School in Bartow County, after Lillian was involved in an accident on school property. Scott filed a motion for summary judgment, and the trial court denied the motion. Scott appeals, arguing that the trial court erred by concluding that he was not shielded from liability in his individual capacity by the doctrine of official immunity. We agree and reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view

---

[16] *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008).
[17] *Wilson v. State*, 286 Ga. 141, 144 (4) (686 SE2d 104) (2009).

the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Lillian was leaving the campus of Woodland High School in Bartow County after dropping her son off at the field house during fall break when she drove into a metal, free-swinging gate. The gate struck the hood of her SUV and penetrated her vehicle, exiting through the rear driver's side window and injuring her. Lillian and her husband sued Scott, alleging that he had a duty to secure the gate, to report the gate's broken latch to the school principal or other authorities, and to have the gate equipped with a properly functioning latch.[2] Scott moved for summary judgment, arguing that he was entitled to official immunity because he had no ministerial duty related to the inspection, maintenance, and repair of the pole gate. The trial court denied summary judgment to Scott, concluding that there was evidence that Scott

is the School Resource Officer, responsible for inspecting the school premises to [e]nsure public safety. Removing obstructions from a roadway is a basic, fundamental requirement for public safety and would have to be considered a ministerial duty. There is evidence in the record from which it could be concluded that Defendant Scott failed in his duty to keep the roadway clear of obstructions.

Following the trial court's order, Scott filed an application for interlocutory appeal, which we granted.

The metal gate at issue consisted of two separate pieces that swung out over the roadway and were secured in the middle with a padlock in order to close off the road. When opened, the gates swung back to each side of the road and over a small post secured with a latching device. Although previously the gates were locked and unlocked on a regular basis, the gates were left in the open position throughout the fall of 2007.

Scott testified that he noticed that the gate was dislodged from the latching post on fewer than five occasions, and he secured it on the post each time. Scott, who was not on duty the day of the incident, never noticed that the latch was not functioning at any

---

[1] (Punctuation omitted.) *Ga. Dept. of Human Resources v. Bulbalia*, 303 Ga. App. 659, 660 (694 SE2d 115) (2010).

[2] The Waitses also named the school principal, Paul Sabin, and two unnamed individuals as defendants. The Waitses ultimately conceded that Dr. Sabin was entitled to official immunity, and the trial court entered summary judgment in favor of Dr. Sabin and the two individuals. Scott is the only remaining defendant and the sole defendant on appeal.

time before then. Two school coaches deposed that the gate had become dislodged in the past, swinging slightly into the roadway. Neither coach reported any information about the gate to anyone, including Scott or Dr. Sabin. One of the coaches testified that he observed the gate swinging into the roadway three times in the two weeks preceding the accident, and during that period, the gate could not be secured because the locking mechanism was bent.

At his deposition, Scott was asked whether "it is the duty of the school police officer to secure the gate if it's found swinging," and he replied, "If I see it, yes, sir, I will." Scott also testified that he checked the gate every day to see whether it was latched open. When asked whether it was his "standard policy and procedure" to do so, Scott replied, "That's just something I do just to make sure incidents don't happen." Scott was also asked about what conversations he had with the principal, Dr. Sabin, regarding the gates "at all at any time," and he responded, "Just to check them to make sure they are latched back."

Dr. Sabin was also deposed, and he agreed that "it is the policy and practice of Woodland High School" that school resource officers would secure any gate that they observed "swinging." However, Dr. Sabin further testified as follows:

Q: What steps had you or anyone under your supervision at Woodland High School taken on or prior to . . . October the 11th . . . of 2007 to make sure that this policy or practice of having the gate secured actually took place?

A: Well, I just want to be clear about that. We don't have a written policy about securing gates back, but we have a practice[3] of doing that because each of the gates has a mechanism to secure the gate back. . . . I don't know that we've had any type of practice of securing gates or if we have any — you know, I don't know of any. I don't know of any steps that we've taken to [e]nsure that gates are secured back.

Dr. Sabin further explained that the responsibility for opening the gates varied, and that "it would be incorrect for me to tell you that I have a person that's responsible to go around and secure all the gates every day, and I want to be clear about that."

The assistant principal for the school was also deposed, and he explained that in 2007, the general duties of the school resource officer were "the safety and protection of the faculty, staff[,] and

---

[3] Dr. Sabin agreed that "a policy is written, and a practice is something you pursue just by your day-to-day activities, rule of thumb[.]"

students of Woodland High School." According to the assistant principal, the school resource officer had an obligation to report any unsafe condition or maintenance issue that he observed on the school campus.

The Waitses also offered the affidavit of Susie Cole, who served as a school resource officer for the Bartow County School System, was then appointed interim director of safety and security for the school system from 1996 to 1998, and served as the assistant director of safety and security for the system from 1998 through 2002; Cole's office was located at Woodland High School from 1999 through 2002. Cole deposed that "[o]ne of the primary duties of a resource officer at a school is to [e]nsure the safety of the students, faculty, parents, and visiting public." Cole also testified:

> *In my opinion*, it is the duty of the school resource officer to check the gates on the school campus on at least a daily basis, to [e]nsure that the gates are properly secured in either the open or closed position, regarding then school policy prescribing whether such gate should be open or closed. I understand from Officer Scott's testimony that he swears he checked all gates on [a] daily basis. . . . *It is my opinion* that it is the duty of the school resource officer immediately to report any broken or defective gate latching mechanism, which would cause a gate to be unable to be safely secured in the open position. The Bartow County School System had standard procedure so that resource officers and others could fill out a maintenance form and submit any maintenance issue for repair. Part of the duties of the resource officer was to fill out such maintenance forms, particularly regarding any issue involving officer safety or security. Donnie Scott had a duty to immediately report or repair a safety and security issue such as the defective latching mechanism on the gate upon which Ms. Waits was injured. . . . *It is my opinion* based on my experience . . . that Donnie Scott . . . knew or should have known that the gate in question swinging freely could constitute a dangerous condition for drivers ascending the road from the field house. Consequently, he had a duty to both report the broken latch gate for repair . . . and a duty to secure the gate safely in the open position rather than to allow it to swing freely.[4]

---

[4] (Emphasis supplied.)

On appeal, Scott argues that the trial court erred by denying summary judgment in his favor based on the doctrine of official immunity because the acts of inspecting the gate, and then reporting any damage or repairing it were discretionary, not ministerial. The doctrine of official immunity, also known as qualified immunity, provides "that although a public officer or employee may be held personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority."[5] Here, the Waitses do not allege that Scott acted with malice or intent to injure. Therefore, Scott is immune from liability if his alleged negligence involved discretionary as opposed to ministerial acts.

"Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case."[6]

A ministerial act is [commonly] one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. *Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite[,] and certain as merely to require the execution of a relatively simple, specific duty.*[7]

Here, the Waitses claim that Scott was negligent in failing to inspect the gates and/or to report or repair any problems with the gate or its locking mechanism. Construing the evidence in favor of the Waitses as nonmovants, there is no evidence of any formal policy or procedure that created a ministerial duty on Scott's part to inspect the gates. The school principal was unaware of any policy or practice that required Scott to inspect the gates. And although Scott admitted at deposition that he checked the gates regularly, he did not testify that he was required to do so. The testimony of Cole, the former school resource officer, that "in her opinion" Scott was required to make daily inspections of the gate, is insufficient to establish that Scott's employer informed him of "clear, definite[,] and certain" instructions or procedure that required him to conduct the purport-

---

[5] (Punctuation omitted.) *Kennedy v. Mathis*, 297 Ga. App. 295, 297 (1) (676 SE2d 746) (2009).

[6] *Woodard v. Laurens County*, 265 Ga. 404, 407 (2) (456 SE2d 581) (1995).

[7] (Punctuation omitted; emphasis supplied.) *Kennedy*, 297 Ga. App. at 297 (1).

edly "relatively simple, specific" duty to inspect the gates.[8] Under these circumstances, Scott's duty, if any, to inspect the gates was discretionary.

The Waitses also claim that Scott had a duty to repair and/or report any defective or broken gate and/or locking mechanism. We have previously held that absent a specific and clear procedure or method for dealing with hazards on school property, the methods used to eliminate or avoid a hazard "are left to the discretion of the school district employees."[9] But even assuming that Scott had such a duty and that it was ministerial,[10] there is no evidence that Scott, who was not even on duty the date of the incident, had knowledge of any such defect or problem in this case prior to Lillian's accident. Although a school coach testified that he observed the broken gate swinging into the roadway several times in the three weeks before the accident and that the gate could not be properly secured because the latch was not operable, the coach never notified Scott or anyone else about the problem.

Under these circumstances, in the absence of any evidence that Scott breached a ministerial duty to inspect the gates or to repair or report a broken gate, the trial court erred by denying Scott's motion for summary judgment.[11]

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 18, 2010 — 

*Harbin, Hartley & Hawkins, Phillip L. Hartley, Martha M. Pearson*, for appellant.

---

[8] *Kennedy*, 297 Ga. App. at 298-299 (1) (county road superintendent was entitled to official immunity in the absence of any formal or written policy setting forth "standards or guidelines dictating the manner, method, and time limit for completing the task"). See *Banks v. Happoldt*, 271 Ga. App. 146, 151 (2) (608 SE2d 741) (2004) (road superintendent's duty to widen and repair road was discretionary because there was no mandated county policy directing his actions); *Brown v. Taylor*, 266 Ga. App. 176, 177 (596 SE2d 403) (2004) (in the absence of a formal or written policy regarding road maintenance, the acts of the county employees upon which liability was premised were discretionary).

[9] *Hemak v. Houston County School Dist.*, 220 Ga. App. 110, 114 (469 SE2d 679) (1996).

[10] See, e.g., *Lincoln County v. Edmond*, 231 Ga. App. 871, 874 (2) (501 SE2d 38) (1998) (road superintendent's duty to remove downed trees from roadway was ministerial); *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982) (county employee's duty to repair and replace stop signs when directed to do so was ministerial).

[11] See *Brown*, 266 Ga. App. at 177 (summary judgment in favor of the county employee defendants was proper because there was no evidence that the employees were aware of any allegedly defective road condition). Compare *Lincoln County*, 231 Ga. App. at 874-875 (2) (affirming the denial of summary judgment to road superintendent because he failed to take action to remove a downed tree blocking a road for approximately two hours after being informed about the hazardous condition).

*Akin & Tate, William M. Akin*, for appellees.