# WHOLE COURT

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
http://www.gaappeals.us/rules/

**July 13, 2015**

# In the Court of Appeals of Georgia

A15A0163.  TATTNALL  COUNTY,  GEORGIA  et  al.  v.
        ARMSTRONG.

McMILLIAN, Judge.

This appeal arises from an inmate's allegations that he was not provided access to proper medical care while he was incarcerated at the county jail. Appellee Jacob Armstrong initially filed a complaint asserting state and federal law claims against Quinton Rush, individually and in his official capacity as Tattnall County Sheriff; Jason Howell, individually and in his official capacity as Tattnall County Chief Jailer; John Williams, individually and in his official capacity as a Tattnall County Sheriff's Deputy; and the Tattnall County Sheriff's Office ("Sheriff's Office"). Armstrong's claims were removed to federal court, but after he dismissed the federal claims, the district court remanded the case back to the Superior Court of Tattnall County.

Armstrong then filed an amended complaint, which the Sheriff's Office and individual defendants answered, and shortly thereafter filed a motion to add Tattnall County (the "County") as a party to the proceedings. The trial court granted Armstrong's motion over Tattnall County's objection, and he amended his complaint for a second and third time, asserting violations of two Georgia statutes (OCGA § 42-4-4 and 42-5-2), and the Georgia Constitution. Tattnall County and the remaining defendants filed motions to dismiss, arguing that Armstrong's claims against the County and the individual defendants in their official capacities were barred by sovereign immunity and, additionally, that the Sheriff's Office was not a legal entity capable of being sued.[1] Armstrong conceded that the Sheriff's Office should be dismissed as a party, but otherwise opposed the motions to dismiss. The trial court dismissed the Sheriff's Office but, citing *Cantrell v. Thurman*, 231 Ga. App. 510 (499 SE2d 416) (1998), refused to dismiss the remaining defendants on sovereign immunity grounds. Pursuant to the collateral order doctrine, see, e.g., *Effingham County v. Roach*, 329 Ga. App. 805, 805, n.1 (764 SE2d 600) (2014); *Bd. of Regents*

---

[1] Tattnall County also asserted two other reasons for dismissal: (1) that Armstrong was in fact provided proper access to medical care as required by Georgia law, and (2) that his claims against the County were barred by the applicable statute of limitations. However, as more fully set out below, we find it unnecessary to reach these issues.

*v. Canas*, 295 Ga. App. 505, 507 (1) (672 SE2d 471) (2009), the defendants[2] directly appealed to the Court from the trial court's order. As more fully set forth below, we now overrule *Cantrell*, and reverse the trial court's denial of defendants' motions to dismiss.

We start with the factual basis for Armstrong's complaint, accepting his well-pleaded material allegations as true.[3] In January 2012, Armstrong was incarcerated in the Tattnall County Jail. At that time he was being treated for vision problems, and on January 19, 2012, his treating physician ordered MRIs of Armstrong's brain, cervical and lumbar spine. The defendants failed to ensure that Armstrong obtained his MRIs on January 19 or at any time thereafter.

Approximately a month later, Armstrong passed out at the jail and was transported to the hospital. The doctors at the hospital determined that Armstrong had suffered a stroke and attributed the cause to abscesses on and/or in his brain.

---

[2] We hereinafter refer to Tattnall County and the individually named defendants collectively as the "defendants."

[3] In reviewing a trial court's order on a motion to dismiss a complaint, "we view all the plaintiff's well-pleaded material allegations as true, and view all denials by the defendant as false, noting that we are under no obligation to adopt a party's legal conclusions based on these facts." *Love v. Morehouse College, Inc.* 287 Ga. App. 743, 743-744 (652 SE2d 624) (2007).

Armstrong alleges that if defendants had allowed him to obtain the MRIs that were ordered by his treating physician, these abscesses would have been detected earlier. Accordingly, Armstrong seeks damages for the severe injuries he suffered due to defendants' negligent and intentional failure to provide him access to proper medical care.

1. Against this backdrop, we now turn to the question of whether Armstrong's claim is barred by sovereign immunity. "[O]ur review of this question of law is de novo." *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014).

Pursuant to a 1991 amendment to the Georgia Constitution, "sovereign immunity extends to the state and all of its department and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[4] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). Accordingly, under Georgia law as it presently stands "sovereign immunity has constitutional status, and that immunity may be waived only by an act

_____

[4] This was not always the case. For greater detail concerning the history of sovereign immunity law in Georgia, see *Center for a Sustainable Coast,* 294 Ga. at 597-598.

4

of the General Assembly or by the Constitution itself." *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 472 (2) (759 SE2d 804) (2014). See *Center for a Sustainable Coast*, 294 Ga. at 599 (2) ("plain and unambiguous text of the 1991 constitutional amendment shows that only the General Assembly has the authority to waive the State's sovereign immunity"); *Marshall v. McIntosh County*, 327 Ga. App. 416, 417 (1) (759 SE2d 269) (2014) (sovereign immunity can only be waived by a legislative act that specifically provides for a waiver and the extent of such waiver).

Within several years of this constitutional amendment, our Supreme Court definitively determined that the extension of sovereign immunity to "the state and its department and agencies" also includes counties, and that such immunity, also known as governmental immunity, protects county employees who are sued in their official capacities. *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994); *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) (sovereign immunity applies to public employees sued in their official capacities because these "'are in reality suits against the state'") (citation and punctuation omitted). "Accordingly, the plain language of Paragraph IX (e) explicitly bars suits against the state or its officers and employees sued in their official capacities, until and unless sovereign immunity

5

has been waived by the General Assembly." (Footnote omitted.) *Center for a Sustainable Coast,* 294 Ga. at 599 (2).[5]

In contrast, subsection (d) of the 1991amendment to Art. I. Sec. II, Par. IX establishes a different type of immunity, known as official or qualified immunity when an officer or an employee of the state is sued in his individual capacity.[6] *Banks*

[5] Although the 1991 constitutional amendment expressly authorized the enactment of a State Tort Claims Act whereby "[t]he General Assembly may waive the state's sovereign immunity from suit" and the "Georgia Tort Claims Act, OCGA § 50-21-20 [et seq.,] was subsequently enacted to waive the sovereign immunity of the state for the torts of its officers and employees, [the legislature] expressly exclude[d] counties from the ambit of this waiver." *Gilbert*, 264 Ga. at 746-747 (2). OCGA § 50-21-22 (5).

[6] That subparagraph provides in full as follows:

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

6

*v. Happoldt*, 271 Ga. App. 146, 147 (1) (608 SE2d 741) (2004). "Under the doctrine of official, or qualified, immunity, a [state officer or employee] may be personally liable for negligent actions taken in the performance of ministerial functions, but [is] immune from personal liability for discretionary acts taken within the scope of their official authority and performed without wilfulness, malice, or corruption." *Gish v. Thomas*, 302 Ga. App. 854, 857 (1) (691 SE2d 900) (2010). Thus, in analyzing a claim of official or qualified immunity, "the single overriding factor is whether the specific act from which liability arises is discretionary or ministerial." (Citation and punctuation omitted.) *Marshall*, 327 Ga. App. at 420 (3) (a).

Accordingly, as can be readily seen, the doctrines of sovereign immunity and official immunity are examined under entirely different analytical frameworks, and the question of whether the state employee, agent or officer is performing a discretionary as opposed to a ministerial act simply has no place in considering whether a county or a county employee or officer sued in his official capacity is entitled to immunity on state law damages claims under Paragraph IX (e). *Hewell v. Walton County*, 292 Ga. App. 510, 513 (2) (664 SE2d 875) (2008) ("a county's sovereign immunity . . . applies equally to ministerial and discretionary acts"); *Seay v. Cleveland*, 270 Ga. 64, 65 (1) (508 SE2d 159) (1998).

7

Unfortunately, in *Cantrell v. Thurman*, 231 Ga. App. 510 (499 SE2d 416) (1998), which, like this case, involved claims based on failure to provide medical care against the sheriff and certain named jail employees in both their official and individual capacities, id. at 510-511, this Court improperly conflated the sovereign/official immunity analysis, and found that "because medical care is a fundamental right and is not discretionary in requiring medical care; . . . such act is *not* subject to either sovereign immunity or official immunity."[7] (Emphasis in original.) Id. at 514 (4). We perpetuated this error in *Middlebrooks v. Bibb County*, 261 Ga. App. 382, 384 (1) (582 SE2d 539) (2003) and in *Howard v. City of Columbus*, 239 Ga. App. 399, 411 (2) (b) (521 SE2d 51) (1999) (physical precedent only), by quoting this language, although in *Middlebrooks* we affirmed the grant of summary judgment to the county on other grounds, 261 Ga. App. at 385 (1). And in *Howard*, we actually undertook the correct analysis in determining whether sovereign immunity protected the county and its employees who were sued in their official capacities by looking only to whether the legislature had waived such immunity for state law negligence claims based on an alleged failure to provide medical care. 239

---

[7] However, *Cantrell*, went on to affirm the grant of summary judgment to the county defendants based on other grounds. 231 Ga. App. at 516 (7).

Ga. App. at 410, 415 (2) (a) & (4). Although we attempted to explain this confusion in *Gish*, 302 Ga. App. at 863-864, our efforts obviously fell short since both plaintiffs and trial courts, such as those in this case, continue to rely on this conflated analysis even when faced solely with a claim of sovereign immunity under subsection (e) of Ga. Const. of 1983, Art. I, Sec. II, Par. IX. Accordingly, we take this opportunity to overrule and disapprove *Cantrell* and *Middlebrooks*[8] to the extent those cases can be read to hold that a discretionary/ministerial act analysis should be applied in deciding whether the sovereign immunity of a county or a county employee sued in his official capacity under Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) has been waived for state tort claims.

Turning back to the facts of this case, Armstrong sued the county and county employees and officials, in both their official and individual capacities. However, the individual defendants did not move to dismiss the claims made against them in their individual capacities, and thus the only issue before the trial court was whether

---

[8] Although *Howard* quotes *Cantrell*, we find it unnecessary to overrule *Howard* since that case is wholly without precedential value and hence already not binding authority. See Court of Appeals Rule 33 (a).

Armstrong had carried his burden of showing[9] that our General Assembly has enacted legislation waiving the county's sovereign immunity for damages claims based on the failure to provide medical care to an inmate.

Armstrong asserts that OCGA § 42-5-2, which provides among other things that the governmental unit, subdivision, or agency having the physical custody of an inmate has the responsibility of providing the inmate with any needed medical care and hospital attention and specifically places the burden of paying for such medical care on the governmental unit housing the inmate, waives the County's sovereign immunity. However, as we have explained on several occasions, "[w]hile OCGA § 42-5-2 (a) imposes upon the county the duty and cost of medical care for inmates in its custody, [this Court has clearly determined] it does not waive sovereign immunity of the county or its agents or employees." *Graham v. Cobb County*, 316 Ga. App. 738, 742 (1) (b) (i) (730 SE2d 439) (2012). See *City of Hapeville v. Grady Memorial Hospital Corp.*, 328 Ga. App. 332, 334-335 (1) (761 SE2d 871) (2014) (physical precedent only) ("In cases involving an inmate's claims against the State or its

_____

[9] Armstrong clearly had the burden to establish waiver. As we have previously explained, "[s]overeign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege and the waiver must be established by the party seeking to benefit from the waiver. (Citation and punctuation omitted.) *Happoldt*, 271 Ga. App. at 148 (1).

10

subdivision for failure to provide medical care, this Court has taken the view . . . that OCGA § 42-5-2 did not constitute an express waiver in such cases."); *Gish*, 302 Ga. App. at 862-863 (4) (OCGA § 42-5-2 imposes cost of medical care on the county but did not waive sovereign immunity of the county). Moreover, our legislature amended this statute in 2009 after we had issued several opinions on this issue, and if it had disagreed with our conclusions in these cases or intended a different result, it could have changed the statute or enacted other legislation to expressly provide a waiver of sovereign immunity. And although Armstrong also cites OCGA § 42-4-4 (a) (2), which places certain duties on a sheriff to provide an inmate with medical care, that statute also fails to include language waiving the immunity otherwise granted to a county sheriff acting in his official capacity. Accordingly, Armstrong's state law tort claims against Tattnall County and the individually named defendants who were sued in their official capacities are barred by sovereign immunity, and the trial court should have dismissed these claims.[10]

---

[10] As our appellate courts have explained, this does not mean that plaintiffs seeking recourse based on allegations that a government denied or provided inadequate medical treatment to an inmate are necessarily without recourse because such claims may in some circumstances state a cause of action under 42 USC § 1983. See *City of Atlanta v. Mitcham*, 296 Ga. 576, 581, n. 4 (769 SE2d 320) (2015); *City of Hapeville*, 328 Ga. App. at 335, n. 12. We again note, however, that Armstrong dismissed his federal claims, and those are not before us.

2. Because of our holding in Division 1, we need not reach the issue of whether Armstrong's claims against Tattnall County were also subject to dismissal based on the running of the statute of limitations or other reasons.

*Judgment reversed. Doyle, C. J., Andrews, P. J., Ellington, P. J., Dillard, Boggs, Ray and Branch, JJ., concur. Barnes, P. J., Phipps, P. J., Miller and McFadden, JJ., concur fully and specially*.

A15A0163.  TATTNALL  COUNTY,  GEORGIA  et  al.  v.
  ARMSTRONG.

BARNES, Presiding Judge, concurring fully and specially.

I concur fully in the result and all that is said in the majority opinion. I write

separately to note that the nomenclature we use in this area of law is extremely

confusing and that, perhaps, we should consider renaming these terms in future cases.

Currently, if John Doe is sued in his *official* capacity, the doctrine of *sovereign*

immunity applies. If John Doe is sued in his *individual* capacity for actions taken

within the scope of his official duties, the doctrine of *official* (or qualified) immunity

applies.   In other words, the doctrine of *official immunity* does not apply to

defendants sued in their *official* capacity.

We could make the concepts easier to distinguish if we replace "official

immunity" with "qualified immunity" when analyzing whether a person is immune

from suit. Then, if John Doe were sued in his *official* capacity, we would continue to

apply the doctrine of *sovereign immunity*, but if John Doe were sued in his *individual*

capacity for actions taken within the scope of his official duties, we would apply the doctrine of *qualified immunity* (instead of official immunity). The federal courts use the terminology "qualified immunity" rather than "official immunity," and the analysis is easier to follow and remember. For example, in considering a claim brought by a prisoner against prison officials for refusing to allow him to wear his personal Santeria beads, the United States Eleventh Circuit Court of Appeals explained that, "While an officer can assert personal-immunity defenses like qualified immunity for suits against him in his individual capacity, the only immunity defenses he can assert in suits against him in his official capacity are forms of sovereign immunity." *Davila v. Gladden*, 777 F3d 1198, 1209 (11th Cir. 2015)

I recognize that our appellate courts have analyzed immunity issues in terms of "sovereign" versus "official" for many years. We often begin the immunity analysis of an official sued in his individual capacity by describing it as "official or qualified," but we generally drop the "qualified" adjective and complete the analysis using only the adjective "official." As the majority notes, confusion remains. Overruling *Middlebrooks* and *Cantrell* should clarify the immunity issues related to inmate claims that are raised in this case. But the continued confusion in this area must be attributed at least in part to the non-descriptive way we label the two forms

2

of immunity, and we could further clarify the analysis by describing the immunity of an official sued in his individual capacity as "qualified."

I am authorized to state that Phipps, P. J., Miller and McFadden, JJ., join in this special concurrence.